THOMAS M. RYAN and STEPHEN C. CLARKE, Respondents, v. PROVIDENCE WASHINGTON INSURANCE COMPANY, Appellant.

*Marine insurance — warranty as to removal from winter mooring — what is a violation thereof — what removal is not justified under a clause as to protection against misfortune — notice to the insurer — proof of a breach not pleaded cannot be first objected to on appeal.*

Where a policy insuring a steam canal boat against damages by fire and marine perils contains the following warranty: " Also warranted to be securely moored in a safe place satisfactory to this Company (the defendant), between noon of the tenth day of December, and noon of the first day of April following, and the company to be duly notified as to time and place when so laid up;" the taking of the boat, without the knowledge or consent of the insurance company, from her winter moorings in the month of February for the purpose of unloading her because of her leaky condition, and in March for the purpose of having her leaky condition repaired, constitutes a breach of warranty avoiding the policy.

The removal of the canal boat for such a purpose without notice to the insurer is not justified by a clause in the policy providing; " And in case of any loss or misfortune it shall be lawful and necessary to and for the assured, his agents, factors, servants and assigns * * * to sue, labor and travel for, and to make all reasonable exertions in and about the defence, safeguard and recovery of the said vessel, or any part thereof, without prejudice to this insurance," particularly when it appears that the leaky condition of the boat was not caused by any sudden injury or misfortune, but had existed for a considerable period of time.

In such a case it is the duty of the insured to give notice to the insurance company of the intended removal of the vessel and to obtain its consent thereto.

Where the complaint in an action upon a policy of marine insurance alleges that the plaintiffs "have fully kept and performed all the conditions and warranties of said policy on their part," and the answer denies this allegation of the complaint and alleges a particular breach of warranty, the defendant cannot give evidence of any breach of warranty except the one specifically alleged in the answer; but where the defendant, without objection on the part of the plaintiffs, gives evidence of the breach of other warranties than the one specifically pleaded in the answer, the plaintiffs will not be heard to raise, for the first time upon appeal, the objection that such evidence was inadmissible.

SPRING and WILLIAMS, JJ., dissented.

APPEAL by the defendant, the Providence Washington Insurance Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Erie on the 17th day of April, 1902, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 5th day of May, 1902, denying the defendant's motion for a new trial made upon the minutes.

The action was commenced on the 19th day of July, 1899, to recover upon a policy of insurance issued by the defendant, insuring a steam canal boat against damage by fire and marine perils.. The action was first tried in November, 1899, when a verdict was directed in favor of the plaintiffs. Upon defendant's motion a new trial was granted upon the ground, as appears by the opinion of the presiding justice, that it was against the weight of the evidence.

*James J. Macklin* and *La Roy S. Gove*, for the appellant.

*George Clinton*, for the respondents.

McLENNAN, J.:

On the 7th day of September, 1898, the defendant issued a policy of insurance dated that day, by which it insured the steam canal boat *Gowanda*, which was owned by one Lewis, against the perils of " the Harbors, Bays, Sounds, Canals, Rivers and Fires," from noon on the 27th day of September, 1898, until noon of the 27th day of September, 1899, in the sum of $3,500. Loss, if any, payable to the plaintiffs. Among the conditions contained in the policy was the following : " Also warranted to be securely moored in a safe place satisfactory to this Company (the defendant), between noon of the tenth day of December, and noon of the first day of

April following, and the company to be duly notified as to time and place when so laid up."

At the close of navigation and about the 10th day of December, 1898, the canal boat being then loaded with corn, which was to remain on board until the opening of navigation, was moored in the Erie basin, Brooklyn, and the defendant was duly notified of the time and place of such mooring, which was satisfactory to it. The boat remained thus moored until about the 1st day of February, 1899, when Lewis, the owner, who was also the captain of the vessel, took her from the Erie basin to Hoboken, N. J., some three or four miles distant, without the knowledge or consent of the defendant, and unloaded her, which occupied a day or two. She was then returned to the Erie basin and moored as before. On the 16th day of March, 1899, Lewis again removed the boat from the Erie basin, also without the knowledge or consent of the defendant; took her across the bay, a distance of about two miles, to Morris basin; immediately put her upon Mr. Lawless' dry dock, where she remained over night. The following morning the boat's bottom was examined and her seams were caulked; she was then taken to Communipaw, about a mile distant, and took on coal. She left Communipaw propelled by her own steam, and proceeded down the bay a distance of several miles to a point near Bayonne, N. J., when she became disabled, put into a pier at that place, and her fires were pulled. Early on the following morning, March 18, 1899, the vessel, while at the pier, was destroyed by fire. To recover the loss thus occasioned this action is brought.

It is conceded that the damage was equal to the amount for which the verdict was directed, which was less than the amount of the insurance, and that proofs of loss were duly prepared and served upon the defendant, and that the plaintiffs are entitled to receive the amount for which the defendant is liable.

Payment upon the policy is resisted by the defendant upon the ground that moving the canal boat from the place where she was moored in the Erie basin in February and March, the occasions above referred to, without the knowledge and consent of the defendant, constituted a breach of the warranty clause contained in the policy above quoted, and rendered the policy void. The plaintiffs contend that upon both occasions when the boat was taken from the

Erie basin she was in a leaky and dangerous condition, and that she was so removed for the purpose of having her repaired and made seaworthy, which it is insisted the insured was bound to do under a clause of the policy which provides : " And in case of any loss or misfortune it shall be lawful and necessary to and for the assured, his agents, factors, servants and assigns   *   *   *   to sue, labor and travel for, and to make all reasonable exertions in and about the defence, safeguard and recovery of the said vessel, or any part thereof, without prejudice to this insurance."

The plaintiffs also insist that the defendant is precluded from urging that the removal of the boat from the Erie basin in February constituted a breach of warranty, because such defense was not pleaded in the answer, notwithstanding the evidence relating to the same was given and received without objection.   The allegation of the complaint, so far as it is material to note, was that the assured " have fully kept and performed all the conditions and warranties of said policy on their part."   The allegation in the answer is as follows : " Defendant further answering denies the allegations of the fourth paragraph of the complaint, that the said Lewis and the plaintiffs fulfilled, fully kept and performed all the conditions on their part."   The answer further alleges a particular breach of the policy, namely, the removal of the boat from the Erie basin on March sixteenth.

The questions involved upon this appeal are : *First.* Was the vessel in such condition at the times when she was removed from her moorings in the Erie basin as to justify the master in removing her in February for the purpose of unloading her, and in March following, the second occasion, for the purpose of having her repaired ? *Second.* If the master was not so justified in moving the vessel from her moorings in February, was the defendant, under its answer, entitled to urge upon the trial that such act constituted a breach of warranty, the evidence given in respect thereto having been received without objection ?   *Third.* Was the verdict directed by the court against the weight of the evidence ?

The " safety moored clause " contained in the policy, as was said by Mr. Justice LAMBERT in deciding the motion for a nonsuit upon the first trial of the case, must be regarded as a warranty, and its violation, whether material or immaterial to the loss, voids the

policy. It must not only be substantially, but strictly complied with, and a failure to do so constitutes such a breach of the contract as to defeat a recovery under it.

The proposition is abundantly supported by the authorities cited by the learned justice, as follows : 1 Pars. Mar. Ins. 337 ; *Snyder* v. *Atlantic Mutual Ins. Co.* (95 N. Y. 196 ); *Audenreid* v. *Mercantile Mutual Ins. Co.* (60 id. 482) ; *First Nat. Bank of Ballston Spa* v. *Ins. Co. of N. A.* (50 id. 48) ; *Stevens* v. *Commercial Mutual Ins. Co.* (26 id. 397) ; *Fernandez* v. *G. W. Ins. Co.* (48 id. 571, 581) ; *Snow* v. *Columbian Ins. Co.* (Id. 624) ; *Ripley* v. *Ætna Ins. Co.* (30 id. 162) ; *Barteau* v. *Phœnix Mutual Life Ins. Co.* (67 id. 595).

The correctness of the rule as stated above is not questioned by the learned counsel for the respondents upon this appeal.

The clause in question is one of substance, and the defendant, independent of any technical rule of construction, was entitled to have its terms complied with. It is apparent that the perils of navigating the harbor of New York with a canal boat in the winter, when severe storms are prevalent and the water is filled with floating ice, are much greater than at any other season of the year, and for the purpose of avoiding such increased danger the clause was inserted in the policy.

The respondents, however, insist that the master of the canal boat in question was justified in removing the vessel from the Erie basin, and that it was his duty so to do under the 2d clause of the policy above referred to, which provides, in substance, that in case of any loss or misfortune to the vessel it shall be necessary for the assured to make all reasonable exertions in and about the defense, safeguard and recovery of the same. In that connection it should be said that the policy also provides that " in case of any loss or misfortune it shall be lawful and necessary to and for the assured * * * to give the Providence Washington Insurance Company prompt notice of the disaster, and a failure to do so will render the said company free from any liability for loss or damage under this policy."

The only excuse given for removing the boat from the Erie basin upon the two occasions in question was that stated by the witness Lewis, the master of the vessel. With reference to her removal in

February, when she was taken to Hoboken and unloaded, he testified, in substance, that previous to her removal and while lying in the basin the water would freeze and then there would come a thaw and the boat would leak; then it would freeze up and thaw again, and this condition existed until the cargo became damaged by the leaking; that he was kept constantly pumping the boat while lying there, and that on the day when she was removed she was leaking badly, and that for the purpose of preventing further damage to the cargo he removed and unloaded the boat. It is not pretended that any sudden injury or misfortune occurred to the boat which rendered immediate action necessary for her safety, but the condition which was present upon the day of her removal had existed to a greater or less extent for a considerable period of time.

With reference to the reason for removing the boat from the basin on the second occasion, the witness testified that after the boat had been unloaded and returned to the basin she continued to leak, it being necessary to pump the water out of her frequently, and that on the sixteenth day of March she was leaking badly, and he then started to the dry dock at Morris basin, to have the boat repaired and her leaky condition remedied, which was done. That after leaving the dry dock and taking coal at Communipaw he discovered that she was still in a defective condition, and the dock at Morris basin being then occupied he started down the harbor for Burlee's dry dock, a distance of several miles, to have her further repaired; that when opposite Bayonne she became disabled, was taken to the pier and the following morning was destroyed by fire. In short, it is claimed from the evidence of the plaintiffs' witnesses that the boat was removed from the Erie basin upon the two occasions in question because she had suffered damage or misfortune, and that it was done in compliance with and as required by the provisions of the policy to which attention has been called, or else because of the provision in the policy which requires the assured to use due diligence to keep the vessel in a seaworthy condition.

It is unquestionably the rule in a contract of insurance like the one here being considered, that a warranty is implied that the vessel will be kept in repair and maintained in a seaworthy condition, so far as the same can be done by active diligence and prudent conduct on

the part of the assured. (*Starbuck* v. *Phenix Ins. Co.*, 10 App. Div. 198; *Berwind* v. *Greenwich Ins. Co.*, 114 N. Y. 231.)

The obligations thus imposed upon the assured did not, however, authorize him to disregard the "safety moored clause" contained in the policy in question, and take the vessel at will, without the knowledge or consent of the defendant, from the place where she was safely moored for the winter, for the purpose of unloading or having repairs made, under the circumstances disclosed by the evidence. To hold that the assured had such right would entirely nullify the "safety moored clause" in the policy. The boat was in no immediate danger of sinking or of sustaining any unusual damage upon the occasion of either removal. Her condition was practically the same after the dates in question as it had been for weeks previous. There was no necessity for hasty action. Under such circumstances it was the duty of the assured to give notice to the defendant of the intended removal of the vessel, and obtain its consent thereto. That duty was clearly imposed by the terms of the policy. The defendant was accessible to the assured. Its office could have been reached by telephone. Before canal boats insured by it were moved from their winter quarters, and started out to navigate the harbor of New York in the months of February and March, it was at least entitled to be notified. It appears that it is not unusual for canal boats to leak to a greater or less extent, both while being navigated and when in winter quarters. Substantial damage from such leaking is obviated by the use of pumps. It is no excuse for disregarding the "safety moored clause" that the assured had become tired of pumping, or was desirous of having his boat repaired at a distant dry dock on one day rather than upon another, but if sufficient reason existed for its removal, it not being in any immediate danger, he was bound to notify the defendant. If that is not the rule, then every leaky canal boat stored during the winter about the harbor of New York, if "leaking badly," although in no danger of sinking or sustaining any unusual damage, may be taken from its winter slip, either for the purpose of unloading her cargo or to have repairs made, and thus subject the insurance company to the perils of "the Harbors" during the winter season, although by the terms of its policies such perils are eliminated, except in case of "loss or misfortune," and in such case it is entitled to immediate notice of the same.

We think the evidence wholly fails to show that any sufficient excuse existed for the removal of the vessel in question from the Erie basin upon either occasion without notice to the defendant; that such removal was in violation of the warranty on the part of the assured, and was such as to prevent a recovery in this case, especially so in respect to the removal of the boat in February. The only suggestion made on behalf of the plaintiffs is that the boat was leaking, and had leaked sufficiently to injure a little of the cargo. There is no suggestion that on the day when removed it was leaking worse than upon other days. The evidence is only susceptible of one interpretation, to wit, that for his own purpose and convenience the assured desired to discharge his cargo in February rather than to hold it until the opening of navigation, and did so in violation of the warranty contained in the policy, without the knowledge or consent of the defendant.

It is urged that this breach of warranty is not available to the defendant as a defense because not pleaded in its answer. We think the position is untenable. There can be no doubt of the correctness of the rule invoked by the respondent, to wit, that where a complaint contains a general allegation of performance, a denial such as was interposed in this case does not raise any issue as to the non-performance of any of the conditions precedent, except the one which it specifically alleged was not performed. (*Elmer* v. *Mutual Benefit Life Association*, 19 N. Y. Supp. 289; affd., 138 N. Y. 642; *Rau* v. *Westchester Fire Ins. Co.*, 50 App. Div. 428.)

The rule, however, has no application where the proof tending to establish non-performance of a condition precedent was given and received in evidence without objection. The whole matter is summed up in *Mandeville* v. *Newton* (119 N. Y. 10, at p. 14), where the court said: " The real transaction was the subject of investigation on the trial, and was litigated without any objection being raised that the evidence was inadmissible under the pleadings. The first time that the question was raised was when findings based on the pleadings were proposed by the plaintiff. The referee was, we think, justified under the circumstances in refusing to find in accordance with the alleged admissions."

It was said in *Elton* v. *Markham* (20 Barb. 343) that the objection that a denial is a negative pregnant is a formal one, and unless

objection is made before the trial, will be waived and each allegation regarded as controverted.

In *Brett* v. *First Universalist Society of Brooklyn* (63 Barb. 610) it was held that the objection that evidence is not admissible under the pleadings must be taken at the trial.

Any number of cases to the same effect might be cited. It would be a strange proceeding in the administration of justice, if the defendant in a case discovers for the first time upon the trial that the plaintiff has done or omitted to do something which would prevent a recovery, and evidence is given pro and con upon that question, without objection and without any suggestion that the defendant's answer is not sufficient to enable such question to be litigated, to hold that such defendant is not entitled to have the evidence so received considered. We think no authority can be found which sanctions such a practice.

In *Farmers' Loan & Trust Co.* v. *Housatonic R. R. Co.* (152 N. Y. 251) the court said : " The learned counsel for the defendant complains that the cause was tried outside the pleadings, and in the same manner as if the action had been brought for the recovery of the salary. If this contention were correct it would not be a fatal objection in this court, in the absence of some specific objection to that course, since parties may, if they so elect, depart from the strict issues made by the pleadings and try other questions relating to the merits of the controversy, by consent or acquiescence."

In *Drennan* v. *Boice* (19 Misc. Rep. 642) the court said : " Without objection proof was given by the defendant which established a complete defense to the action, and while this defense was not pleaded, the plaintiff's consent to the litigation of it was to be inferred from his failure to oppose the introduction of the evidence as irrelevant to the issues." (Citing *Frear* v. *Sweet*, 118 N. Y. 454).

And in the latter case it was further held that the court in reviewing such a case is only called upon to determine whether the parties have consented to try the substituted issues, and if so whether the decisions of the court upon those issues are according to law. And further, that in the absence of amended pleadings or of stipulation, the court of review must infer the consent to try such substituted issues from the evidence offered upon the one side, and the

absence of objections or the character of the objections upon the other.

If upon the trial of the case at bar the defendant had discovered facts which led him to suppose that the assured had willfully burned the vessel in question, and had introduced evidence which established that fact without objection on the part of the plaintiff or without suggestion that the answer did not raise such an issue, it would hardly be contended that the trial court would be justified in disregarding the evidence thus given, and notwithstanding it direct a verdict in favor of the plaintiff. According to the view which we have taken of this case, upon the evidence as it now stands, the fact that the assured about the first of February removed the vessel in question from the Erie basin for the sole purpose of discharging her cargo, and without the knowledge or consent of the defendant, is equally as fatal to a recovery by the plaintiffs.

The conclusion of the learned trial court that the canal boat in question was moved from the Erie basin on the 16th day of March, 1899, for the sole purpose of repair, with a view to protecting it against loss and damage, we think is against the weight of the evidence. It appears that two days prior to that time the master had made a charter to carry a cargo of fertilizer from Carteret, N. J., to Southport, Conn., with usual dispatch. He immediately connected up the machinery of his vessel; went to the dry dock in Jersey City; had her put in proper repair; went to Communipaw, got a supply of coal, and started down the bay exactly in the direction of Carteret, and was following that course, with his own steam, when the boat was disabled and he was compelled to tie up at the pier in Bayonne, where the boat was destroyed by fire the following morning. The evidence of Lewis is that he was on his way to Burlee's dry dock. He had never had any repairs made at that dry dock. The evidence clearly indicates that the repairs which he claims were necessary could have been made at the Erie basin, or at the dry dock in Morris basin if he had waited his turn; still he takes the boat miles away in the month of March, to have her, as he says, repaired and made seaworthy. Upon this question the evidence is substantially the same as upon the former trial, and we agree with the justice who then presided that a verdict for the plaintiffs was against the weight of the evidence.

For all the reasons above stated we think the judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide event.

Adams, P. J., and Hiscock, J., concurred; dissenting opinion by Spring, J., in which Williams, J., concurred.

Spring, J. (dissenting):

The stipulation of warranty contained in the policy that the boat is " to be securely moored in a safe place satisfactory to this Company," is to be construed in connection with other provisions in the policy. The defendant was expressly exempted from liability for unseaworthiness or from " any neglect in not keeping the vessel well pumped out," and the duty was also imposed upon the insured that the vessel should " be tight." There was the further provision that it was incumbent upon the insured " to sue, labor and travel for, and. to make all reasonable exertions in and about the defence, safeguard and recovery of the said vessel or any part thereof, without prejudice to this insurance."

That is, inasmuch as the insurance extended to other losses than by fire, the company required the insured to use prudence and caution in keeping his vessel in a seaworthy condition.

The boat was moored at Erie basin on the tenth of December, and it was loaded with corn. In February it was leaking badly and sixty bushels of corn were spoiled, and the captain of the boat, therefore, removed it to Morris basin, unloaded his cargo and returned to the Erie basin. We apprehend this removal of the boat did not vitiate the contract of insurance. The courts will not put that interpretation upon an agreement which will result in a forfeiture, unless no other construction can be fairly spelled out of its terms. Two things the owner of the boat desired to do:

*First.* To get rid of his corn which was being damaged, and, *second,* to repair the boat. Had he allowed the boat to remain moored at the Erie basin and sink or become unseaworthy he very properly would have been charged with negligence. It certainly was a question of fact whether under all the circumstances this was a proper exercise of the care required of him.

The vessel continued to leak during the winter and the owner endeavored to stop it by caulking, but the leaking increased until

about the tenth of March it grew more apparent. He, therefore, took his boat again to Morris basin at Lawless' dry dock, about two miles from where it was moored, to have it repaired. The repairs were made and he went to another dock close at hand and took on two tons of coal to enable him to get back to the Erie basin. He there discovered that the stay bolts had been wrenched out and to repair these it was necessary to go where there was a machine shop. His pilot arranged to have this done at Burlee's dry dock, four miles farther down. He started for that place, stopped over night at Bayonne, where the fire occurred. Before leaving Erie basin he endeavored to get into a dry dock in that basin to have his boat repaired, but was unable to do so. Again I think it was a question of fact whether he acted properly and within a fair endeavor to repair his boat. Irrespective of any provision in the policy this duty was incumbent upon him. (*Union Insurance Co.* v. *Smith*, 124 U. S. 405, 427; *Berwind* v. *Greenwich Ins. Co.*, 114 N. Y. 231, 234.) He could not sit by and allow his boat to sink through his own carelessness and then hold the defendant liable on its policy.

It is suggested that New York harbor is filled with floating ice in the month of March and the risk was consequently increased. Loss from ice the defendant by its policy is expressly relieved from.

It is contended that the real reason for the owner of the boat leaving Erie basin was to fulfill a contract to take a load of merchandise to Carteret, N. J. This was a question of fact and the evidence fully justifies the conclusion of the court adversely to this suggestion. Lewis, the owner of the boat, testified to the reason which induced him to go to Lawless' dry dock. He further testified that it would take twelve tons of coal to make the trip to Carteret; that he had not taken on sufficient provisions or engaged any crew for this trip. This is corroborated in a measure by the evidence of the pilot, who testified that after he reached Lawless' dry dock and discovered the serious injury to the boat he called up the proprietor of Burlee's place and arranged to have the boat repaired at that dock. The evidence, therefore, is quite clear that the motive of the owner of the boat in leaving the Erie basin was to mend its leaky condition.

The evidence clearly shows also that the owner of the boat was not seeking to spirit it away without the knowledge of the defend-

ant.   The insurance had been obtained through a Mr. Reddy who occupied the same office with the defendant.   Reddy delivered policies and received premiums on behalf of the defendant, and the dealings of the owner of the boat were chiefly with this insurance agent, and that seems to have been true largely of boat owners. Reddy was notified of the condition of the boat and advised that it be removed and repaired.   While this may not strictly be held within the terms of the policy a notice to the defendant, it does take the sting out of any criticism upon the motive of the boat owner.

I think the judgment should be affirmed, with costs.

WILLIAMS, J., concurred.

Judgment and order reversed and new trial ordered, with costs to the appellant to abide event, upon questions of law only, the facts having been examined and no error found therein.