136   O'Connor Transp. Co., Inc., v. Glens Falls Ins. Co.

Fourth Department, July, 1921.            [Vol. 198

O'Connor Transportation Company, Inc., Plaintiff, *v.*
Glens Falls Insurance Company, Defendant.

Fourth Department, July 1, 1921.

Insurance — marine insurance — action to recover on fire policy —
defense of breach of warranty by assured that rules and require-
ments of Vessel Fire Register shall be complied with and that
certificate had been obtained — waiver of obtaining certificate
not shown — defendant not required to make inquiries whether
certificate secured or not.

In an action on a marine fire insurance policy it appeared that the appli-
cation of the plaintiff contained a clause " Subject to Vessel Fire Register
conditions;" that such clause referred to and meant the Vessel Fire
Register warranty which was attached to the policy; that in said warranty
the assured expressly warranted that the rules and requirements of the
Vessel Fire Register are and shall be complied with and observed, and
that its certificate has been obtained, and that the violation of the
warranty shall render the policy void; that the Vessel Fire Register was
an association which through its agents examined boats and when the
boats were equipped in accordance with their rules and regulations issued
certificates to the owners, and that relying upon such certificates, and
without inspection of the boats, insurance agents would issue policies,
basing their action upon the confidence which they had in such inspections,
ratings and certificates.   The defense interposed was that the plaintiff
had breached the warranty contained in the policy and the plaintiff to
overcome said defense attempted to prove that the defendant had waived
the obtaining of the Fire Register certificate.

*Held*, that the doctrine of waiver and estoppel as applied to insurance, upon
buildings and contents does not apply with the same force and effect to
marine policies, and to fire insurance policies upon boats when in foreign
waters.

The warranty attached to the policy was a true warranty and not a repre-
sentation, and the violation thereof, whether material to the loss or not,
avoided the policy.

However, if it be considered as a representation only it was a material and
vital representation, and the failure to comply therewith amounted to a
breach of contract and prevented a recovery on the policy.

A waiver of the warranty was not shown by the fact that the plaintiff had
applied to the same agent two years before for a policy upon the same
boat and that the policy which contained the same rider with the same
warranty clause issued upon an application similar to the one in question,
was issued after the insurance agent had telegraphed the Fire Register's

O'Connor Transp. Co., Inc., *v.* Glens Falls Ins. Co.   **137**

App. Div. 136]        Fourth Department, July, 1921.

manager as follows: " Please wire value and limit you recommend steamer *City of Naples*," and received in reply telegram as follows: " We have no report on steamer *City of Naples*. Would estimate her value at least Thirty Thousand Dollars. Boat undergoing extensive repairs." This is true, especially in view of the fact that a Fire Register certificate was required for each year.

Furthermore, defendant had an absolute right to rely upon the warranty in the application for the last policy, the one sued upon, and upon the warranty clause included in that policy even though it be conceded that it might have been held to have waived the defense of the breach of that warranty if it had been sued upon the first policy issued.

The defendant, when it issued the policy in question, had a right to rely upon the representation, and it was not bound to make any effort to ascertain whether the representation was true or false, and, therefore, the fact that it had lists of boats which had been certified did not require it to search such lists to find whether the representation contained in the application was true or false.

Motion by the defendant, Glens Falls Insurance Company, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance after the direction of a verdict in plaintiff's favor by the court at the close of the case upon a trial before the court and a jury at the Erie Trial Term in February, 1921.

*Thomas C. Burke,* for the plaintiff.

*Swift, Gratwick & Potter* [*Parton Swift* of counsel], for the defendant.

Hubbs, J.:

This action was brought to recover on a fire insurance policy, New York standard form, issued by the defendant to the plaintiff on the boat *Frank O'Connor*. The defense was that the plaintiff had breached a warranty contained in the policy. The plaintiff pleaded that as to one part of the warranty there had been full performance by the plaintiff and as to the other part there had been a waiver by the defendant. The court directed a verdict in favor of the plaintiff and ordered that the exceptions be heard in this court in the first instance.

The policy was issued by the defendant's agent in New York city upon the application of the plaintiff filed by its

brokers. The application contained the clause: " Subject to Vessel Fire Register conditions." It is conceded that such clause referred to and meant the vessel fire register warranty which was attached to the policy when it was issued and delivered to the plaintiff, and which read as follows:

" THE VESSEL FIRE REGISTER WARRANTY.

" In consideration of the premium for which this policy is issued, it is expressly warranted by the assured, that the rules and requirements of the Vessel Fire Register for 1915 are and shall be complied with and observed, and that its certificate has been obtained, and it is understood and agreed between the assured and this company that the violation of said warranty shall render this entire policy void."

The rider contained, also, the following provision: " Privilege to fit out, to do painting, to go on dry dock, to make ordinary alterations and repairs, and to lay up." And at the end the following: " Attached to and forming part of policy No. 4315 of the Glens Falls Insurance Company. S. D. McComb & Co., Incorporated, Agents."

It will be noted that there are two parts to this warranty: *First*, that the rules and regulations of the vessel fire register for 1915 are and shall be complied with and observed; *second*, that its certificate has been obtained. It also provides that a violation of said warranty shall render the entire policy void.

The plaintiff attempted to prove that the first part of the warranty had been complied with. I think it extremely doubtful if the plaintiff is entitled to succeed on that phase of the case.

It is not claimed that the certificate had ever been obtained, but the plaintiff attempted to prove that the defendant had waived the obtaining of such certificate. The trial court adopted that theory. I do not believe that it can be held, under the evidence in this case, that the defendant waived the obtaining of the certificate.

It has always been held that the doctrine of waiver and estoppel as applied to insurance upon buildings and contents does not apply with the same force and effect to marine policies

and to fire insurance policies upon boats when in foreign waters. That there is a valid reason for such distinction is apparent. If a person goes to a local fire insurance agent to have a policy issued upon his dwelling located in the same village or city, the local agent is usually familiar, in a general way, with the building and he has before him in his office an underwriters' map which discloses the location and exposures of the building and its construction, and which gives a rating placed upon it by the board of underwriters, so that when he issues the policy the agent is in a position, regardless of what the assured may say, to know the facts in regard to the physical hazard, and if he is in doubt about the matter the information can be obtained at first hand very readily by inspecting the building.

An entirely different situation exists when a policy is issued on a boat in foreign waters. The insurance agent and the company issuing the policy are entirely at the mercy of the owner of the boat and must rely upon the warranties and representations made as to the construction, physical condition and physical hazard involved in issuing the policy. To meet this situation an association was organized, known as the vessel fire register. The managers of the register for the district of the Great Lakes were Smith Brothers, of Cleveland. They had an arrangement with agents of insurance companies writing insurance on boats and with owners of boats, the effect of which was to enable owners of boats who had obtained their certificates to obtain insurance without waiting for an inspection by the insurance companies or their agents. The arrangement also enabled insurance agents desiring to issue policies and to fix rates of insurance to do so in reliance upon their inspections and certificates. They were experienced in their line. They inspected boats, made suggestions to the owners as to their requirements for making boats safe against the fire hazard, and when boats were equipped in accordance with their rules and regulations, they issued certificates to the owners of such boats showing that they complied with the standard which they had established and with their rules and regulations. Relying upon such certificates, and without inspections of the boats, agents would issue policies, basing their action upon the confidence which they had in such

inspections, ratings and certificates. The certificates were a vital part of the arrangement, for when certificates were issued, the reputation, experience and judgment of the experts who made the inspections were placed upon the risks and it was those things upon which the insurance underwriters relied.

When the application for the policy in question was made, it was represented in the application that the boat in question had such a certificate when in fact it did not have it. The boat had not been inspected and had not been rated, as required by such warranty.

It seems to me that it is clear that the warranty attached to the policy was a true warranty and not a representation. If I am correct in that regard, the law is clear that a violation of the warranty, whether material to the loss or not, avoided the policy; that it must have been strictly complied with; and that a failure to comply with it constituted a breach of · the contract and prevents a recovery on the policy. I take it that this principle is elementary, and it has been clearly stated by this court in the case of *Ryan* v. *Providence Washington Ins. Co.* (79 App. Div. 316, 319).

However, if there be any question as to whether or not the clause is a true warranty, I think that it would make no difference in this case, as there is a point where a representation practically merges into a warranty in so far as the legal effect is concerned. While it is the general rule that in case of representations all that the law requires is a substantial compliance with such representations, still where the representations are vital and are not complied with, the contract is breached and there can be no recovery on the policy. (Richards Ins. Law [3d ed.], 128.)

There can be no question but what there was a breach of the warranty or representation, that it was material and vital and that such breach avoided the policy, unless the agent issuing the policy, at the time when it was issued, waived such condition or estopped the defendant from raising it, that doctrine being based, of course, upon the principle that it would be a fraud on the insured to issue the policy and accept the premium knowing at the time that the policy would have no legal effect if the insurer insisted on the

condition.   In this case there is an express representation in the application itself that the certificate had been issued and that the policy was being issued subject to the warranty which required the certificate.

The learned trial court based its decision that there had been a waiver of the warranty clause in question upon the fact that the plaintiff had applied to the agent of the same company in April, 1916, for a policy of $1,000 upon the same boat, and that the policy contained the same rider with the same warranty clause issued upon an application similar to the one in question.   Prior to issuing that first policy, in April, 1916, the insurance agent at New York telegraphed to Smith Brothers as follows: " Please wire value and limit you recommend steamer *City of Naples*, owner James O'Connor, Tonawanda."   In reply it received a telegram from Smith Brothers, as follows: " We have no report on steamer *City of Naples*.   Would estimate her value at least Thirty Thousand Dollars.   Boat undergoing extensive repairs."   That was the boat in question, then called *City of Naples*.   After receiving that telegram the defendant's New York agent issued the policy for $1,000.

It will be noted that there was nothing in those telegrams which stated that the boat *City of Naples* had not been certified.   The telegram from Smith Brothers stated that the boat was laid up for extensive repairs and that they had no report.   The agent issuing the policy might have believed, relying on the statement in the application to that effect, that the boat had been certified in 1915, and that the telegram meant that Smith Brothers had no report since the boat was laid up for repairs, as it appears that such certificates had to be issued each year, each certificate showing that an inspection had been made within a year and the condition of the boat within that period.

Between July and October, 1916, Smith Brothers, after the first policy had been issued, sent to the various agents of the insurance companies, including the New York agent of the defendant, a list of vessels on the lakes inspected and certified by them during that season, and a similar list was sent to said agent of the defendant in 1917 and 1918.   This list contained from 150 to 200 names of vessels with data in regard to the

142   O'Connor Transp. Co., Inc., *v.* Glens Falls Ins. Co.

Fourth Department, July, 1921.                    [Vol. 198

inspection, rating, etc., of each boat certified. The undisputed evidence is that the only use made by the defendant's agent of the list was to examine the column of ratings and where a vessel was rated at less than one hundred to examine its files to see if it had insurance on such vessel and, if so, to take appropriate action. No record was kept by the defendant's agent of vessels insured under the register warranty and no one connected with the defendant's agent subsequent to April 21, 1916, and before the boat in question was destroyed, knew that the boat had not been certified.

In the fall of 1916 the plaintiff's brokers applied to the same agent of the defendant for a second policy on the same boat to contain the register warranty, and the second policy was issued. In October, 1917, another application was filed with said agent of the defendant in the same form and another policy was issued. In October, 1918, the fourth policy, the one in question, was issued upon the same form of application. Each of said policies contained the register warranty clause.

The court held that the telegrams and the fact that the list of boats inspected had been mailed to the defendant's agent constituted evidence sufficient to establish a waiver by the defendant of the clause in question. In this I think the court was clearly in error.

The defendant had an absolute right to rely upon the warranty in the application for the last policy and upon the warranty clause included in that policy even though it be conceded that it might have been held to have waived the defense of the breach of that warranty if it had been sued upon the first policy issued. The rules required that the certificate be issued each year, and the fact that the boat might not have been certified in 1915 was not sufficient evidence upon which to base a finding that it had not been certified when the last policy was issued in 1918.

I think this case is distinguishable from the line of cases holding that knowledge possessed by an agent of an insurance company when issuing a policy will estop the insurance company from pleading a defense to a subsequently issued policy or will constitute a waiver as to some condition of the subsequently issued policy. The attorney for the defendant illus-

trates that principle by saying that if when the first policy was issued it had been represented that the boat was a steel boat when in fact it was a wooden boat, and the agent issuing the first policy knew that it was a wooden boat, under a subsequent policy issued by the same company, the company would be estopped from defending upon the ground that it had been misled in issuing a policy upon a wooden boat which had been represented as a steel boat. Under such circumstances there could not have been any change in the construction of the boat. Here, however, the very terms and conditions of the vessel fire registry rules required that each year a certificate should be issued upon an inspection. It might be that the inspection in one year would disclose facts which would require the rejection of the boat as a risk and that the inspection of the boat for the next year would disclose that the conditions had been remedied and the certificate would be issued.

It seems to me, however, that there is another ground which is just as vital and that is that the insurance company, when it issued the policy in question, had a right to rely upon the representation, that it had no duty to perform in endeavoring to ascertain whether the representation was true or false, and that the fact that it had lists of the boats which had been certified did not require it to search such lists to find whether the representation contained in the application was true or false. The furthest that any case has gone in this State, that I recall, is that of *Skinner* v. *Norman* (165 N. Y. 565). In that case the master of a boat, when applying to a local agent for insurance upon the boat, stated to the local agent that he did not know whether or not there was a chattel mortgage upon the boat, but said that the agent could find out by asking the owner of the boat, the plaintiff in the action. The agent agreed to ask the owner of the boat before issuing the policy, but failed so to do and issued the policy without an indorsement thereon to the effect that the boat was chattel mortgaged as required by the policy. The Court of Appeals held that while the agent was ignorant of the existence of the chattel mortgage as a matter of fact, still he was chargeable with such knowledge as a matter of law as he had volunteered to ascertain the fact by inquiring of the owner, and that he

was, therefore, in the same position as an agent who issues a policy with actual knowledge of a condition which would avoid the policy unless an indorsement of the fact be made upon it. A recovery was permitted in that case because the defendant had waived the defense by assuming the duty of ascertaining by inquiry whether or not the boat was chattel mortgaged.

In the case at bar there was no agreement on the part of the agent to ascertain whether or not the certificate had been issued. In the *Skinner* case the court said: " It is the duty of such applicant to comply with the conditions of the policy and to give the information requisite for its validity. The company may rely on the presumption that the insured has stated all the material facts and as a rule is not bound to make inquiries."

In the case of *Sanders* v. *Cooper* (115 N. Y. 289) the court said: " The plaintiff, to avoid the effect of the condition, was bound to show that, as matter of fact, the agent knew of the outstanding insurance. It was not sufficient to relieve the plaintiff that the agent was put upon inquiry, or might by the exercise of diligence have ascertained the truth."

All concur.

Defendant's exceptions sustained and motion for new trial granted, with costs to defendant to abide event.