190 F.3d 26 (2nd Cir. 1999)
 COMMERCIAL UNION INSURANCE COMPANY, Plaintiff-Appellant-Cross-Appellee, v.
FLAGSHIP MARINE SERVICES, INC., d/b/a Sea Tow Services of Lee County and SEA TOW OF LEE COUNTY, Defendants-Appellees-Cross-Appellants,
BRISOTTI & SILKWORTH, INC., Third-Party Defendant.
COMMERCIAL UNION INSURANCE COMPANY, Plaintiff-Appellant, v.
FLAGSHIP MARINE SERVICES, INC., d/b/a Sea Tow Services of Lee County, GARY MACLEAN, Defendants-Appellees.
 Docket Nos. 98-7306(L), 98-7536(XAP), 98-7532
August Term 1998
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued March 11, 1999
Decided: August 24, 1999
 
 Appeal from the judgments of the United States District Court for the Southern District of New York (Jed S. Rakoff, District Judge), dismissing plaintiff-appellant-cross-appellee's complaint, the counterclaims of defendant-appellee-cross-appellant Flagship Marine Services, Inc., and Commercial Union's second, separate complaint.
 Reversed. [Copyrighted Material Omitted]
 DAVID R. HORNIG (Julia Moore, Of Counsel, on the brief) Nicoletti Hornig & Sweeney New York, NY for Plaintiff-Appellant-Cross-Appellee
 STEVEN G. SCHWARTZ Mattlin & McClosky Boca Raton, FL, and JOHN J. McLAUGHLIN Wagner, Vaughan & McLaughlin Tampa, FL for Defendants-Appellees-Cross-Appellants
 WILLIAM M. BILLINGS Jacobowitz, Garfinkel & Lesman New York, NY for Third-Party-Defendant
 Before: WALKER, McLAUGHLIN, and KEITH,* Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 Plaintiff-appellant-cross-appellee Commercial Union Insurance Company ("Commercial Union") seeks to disclaim coverage for an accident that occurred aboard a ship operated by defendant-appellee Flagship Marine Services, Inc. ("Flagship Marine"). The United States District Court for the Southern District of New York (Jed S. Rakoff, District Judge), entered a March 6, 1998 judgment dismissing Commercial Union's first action for a declaratory judgment and Flagship Marine's counterclaims for breach of contract and bad faith insurance practices. The district court also entered a March 31, 1998 judgment dismissing Commercial Union's second action. For the reasons set forth below, we reverse.
 
 BACKGROUND
 
 2
 Flagship Marine is in the business of providing emergency and non-emergency marine assistance to vessels. It is one of approximately seventy companies licensed nationally to provide such services under the trademark of Sea Tow International. Services are provided through two types of arrangements: vessels may pay an annual fee, or they may contract for services on an ad hoc basis. Only operators of non-commercial pleasure craft qualify for the annual fee membership.
 
 
 3
 Prior to 1994, all of the Sea Tow licensees were insured under a master insurance policy issued by the New Hampshire Insurance Group. When that policy was not renewed, the Sea Tow licensees obtained a policy issued by Commercial Union, but each licensee had to obtain its own policy. Flagship Marine obtained one such policy, which went into effect on September 15, 1994. The policy, which consisted largely of pre-printed provisions that are standard in the industry, insured Flagship Marine for a variety of circumstances, including accidents aboard its vessels. The policy contained a "Tow Endorsement" provision as follows:
 
 
 4
 In consideration of the rate and premium charged, it is understood and agreed that coverage is hereby provided for the towage of yachts up to 50 feet in length. The towage of yachts in excess of 50 feet is subject to prior approval of underwriters with additional premium to be agreed, if any.
 
 
 5
 On November 13, 1994, a Flagship Marine vessel was involved in an accident. While assisting a vessel in distress, the Flagship Marine vessel's captain, Gary MacLean, caught his leg in a rope, was pulled overboard, and sustained serious injury. Flagship Marine promptly notified Commercial Union of the accident. Commercial Union disclaimed coverage based on the Tow Endorsement and later rescinded the policy ab initio. According to Commercial Union, its policy did not provide coverage because, at the time of the accident, MacLean was towing a non-yacht vessel that was in excess of 50 feet in length. Flagship Marine agrees that the distressed vessel was not a yacht and was 61 feet in length.
 
 
 6
 On January 23, 1995, Commercial Union brought an action for a declaratory judgment in the United States District Court for the Southern District of New York. About six weeks later, MacLean sued Flagship Marine and Commercial Union in Florida state court, seeking recovery for his injuries. Commercial Union tried to have the Florida action dismissed on the basis of the Tow Endorsement; when it did not succeed, it refused to participate further in the action. The Florida action ultimately was settled on September 20, 1996 by an agreement between Flagship Marine and MacLean, and judgment was entered in favor of MacLean for $545,000. When Commercial Union refused to pay MacLean, his state action against Commercial Union was reinstated in the Florida court.
 
 
 7
 In the meantime, Commercial Union pursued its declaratory judgment action in the Southern District of New York. In that suit, Commercial Union sought a declaration that, in light of the Tow Endorsement, it was not liable for any expenses incurred by Flagship Marine as a result of the MacLean accident. Flagship Marine counterclaimed, alleging that Commercial Union had breached its insurance contract and had engaged in bad faith insurance handling in violation of Florida law.
 
 
 8
 The district court rejected Commercial Union's construction of the Tow Endorsement. Ruling from the bench, the district court held that the policy did not preclude coverage for Flagship Marine's towage of vessels in excess of 50 feet. The district court focused on the use of the term "yacht" in the Tow Endorsement, as contrasted with the term "vessel" elsewhere in the contract. In the district court's view, the Tow Endorsement was properly read as excluding coverage for the towage of yachts (i.e., non-commercial vessels) in excess of 50 feet, but not other types of vessels, regardless of size.
 
 
 9
 The district court then conducted a bench trial. Having lost its first motion for summary judgment based on the language of the Tow Endorsement, Commercial Union argued at trial that the policy was void for insufficient disclosure by the insured under the maritime doctrine of uberrimae fidei. It further argued, and pressed in a second motion for summary judgment, that it should not be held liable because the policy was one of indemnity rather than liability, and Flagship Marine had not yet paid MacLean. After four days of testimony and argument, the district court ruled in favor of Flagship Marine on Commercial Union's declaratory judgment action, and dismissed Commercial Union's second summary judgment motion as well as Flagship Marine's state law counterclaim.
 
 
 10
 On June 20, 1997, Commercial Union filed a second declaratory judgment action in the Southern District of New York, raising the same issues it had raised in its second summary judgment motion. The district court dismissed the second action on abstention grounds under Brillhart v. Excess Insurance Co., 316 U.S. 491 (1942), in light of the pendency of the Florida state action.
 
 
 11
 Both parties appeal. Because we find that the district court erred in its construction of the Tow Endorsement, we reverse.
 
 DISCUSSION
 I. Choice of Law
 
 12
 Neither party has raised or briefed the issue of what law applies to the issues raised in this case, and the district court did not engage in a choice of law analysis. Absent a specific federal rule, federal courts look to state law for principles governing maritime insurance policies, see Wilburn Boat Co. v. Fireman's Fund Ins., 348 U.S. 310, 319-21 (1955), and apply federal maritime choice of law rules to determine which state's law to apply, see Advani Enters., Inc. v. Underwriters at Lloyds, 140 F.3d 157, 162 (2d Cir. 1998); Sundance Cruises Corp. v. American Bureau of Shipping, 7 F.3d 1077, 1080 (2d Cir. 1993). There is no specific federal rule governing construction of maritime insurance contracts. See Wilburn Boat, 348 U.S. at 321. Nevertheless, we find it unnecessary to determine which state's law applies, since, as we discuss below, it appears that the outcome would be the same under either New York or Florida law, and neither party has suggested otherwise.
 
 II. Construction of the Contract
 
 13
 We review the district court's construction of the policy de novo. See Associated Metals & Minerals Corp. v. S/S Jasmine, 983 F.2d 410, 413 (2d Cir. 1993); Bellefonte Reinsurance Co. v. Aetna Cas. & Sur. Co., 903 F.2d 910, 912 (2d Cir. 1990). The first question that we must address is whether the Tow Endorsement constitutes a warranty. Commercial Union contends that the Tow Endorsement represents a warranty by Flagship Marine that it will tow only yachts less than 50 feet in length. According to Commercial Union, the legal effect of a finding that the provision is a warranty is that Flagship Marine's breach of the provision precludes any recovery under the insurance policy. Flagship Marine contends that the provision is not a warranty, but merely an exclusion from liability that should be construed against the insurer.
 
 
 14
 A. Whether the Tow Endorsement Is a Warranty
 
 
 15
 We agree with Commercial Union that the Tow Endorsement constitutes a warranty by Flagship Marine, rather than an exclusion from coverage, the significance of which we address in a moment. The district court did not address whether the Tow Endorsement constituted a warranty or an exclusion.
 
 
 16
 Although, at first glance, the Tow Endorsement does not appear to be a warranty, a closer inspection of its contents, read in the context of the contract in its entirety, leads to the conclusion that it is a warranty whereby Flagship Marine promised to limit its towing activities to the towing of yachts less than 50 feet in length. For example, the Tow Endorsement appears in a section of the policy that begins with the header "[t]he following Warranties are added to and made part of [the policy]." Although the sub-section we are concerned with does not itself begin with the signal "[w]arranted that," it directly follows five sub-sections that do begin with these words, and like the five previous sub-sections, it is indented under the above-quoted header. Moreover, the policy elsewhere provides that the "Trading Warranty" supporting the policy, which we infer reflects Flagship Marine's representation of its business activities to the insurer, is "as per Tow Endorsement." These textual phrases and cues, in our view, signify that the Tow Endorsement is a warranty.
 
 
 17
 This conclusion is significant because of the special status that warranties hold under the law of insurance contracts, and especially the law of maritime insurance contracts. A "warranty" is a promise "by which the assured undertakes that some particular thing shall or shall not be done, or that some condition shall be fulfilled, or whereby he affirms or negatives the existence of a particular state of facts." Leslie J. Buglass, Marine Insurance & General Average in the United States 27 (2d ed. 1981) (quoting Sect. 33(1) of the English Marine Insurance Act of 1906, a traditional source of shared Anglo-American maritime law). A warranty, whether express or implied, stands in contrast to an exclusion, which does not represent a promise on the part of the insured, but merely "define[s] the coverage limits . . . [by] clarify[ing] and defin[ing] the types of events an insurer does not intend to cover." David D. Hallock, Jr., Recent Developments in Marine Hull Insurance: Charting a Course Through the Coastal States of the Fourth, Fifth, Ninth, and Eleventh Circuits, 10 U.S.F. Mar. L.J. 277, 301 (1998).
 
 
 18
 New York's Insurance Law defines a "warranty" as
 
 
 19
 any provision of an insurance contract which has the effect of requiring, as a condition precedent of the taking effect of such contract or as a condition precedent of the insurer's liability thereunder, the existence of a fact which tends to diminish, or the non-existence of a fact which tends to increase, the risk of the occurrence of any loss, damage, or injury within the coverage of the contract.
 
 
 20
 N.Y. Ins. L. § 3106(a). As a general matter, warranties represent a promise by the insured to do or not to do some thing that the insurer considers significant to its risk of liability under an insurance contract.
 
 
 21
 In all areas of insurance other than maritime insurance, an insured's breach of warranty does not "avoid an insurance contract or defeat recovery thereunder unless such breach materially increases the risk of loss, damage, or injury within the coverage of the contract." Id. § 3106(b). In other words, if an insured breaches a warranty that is collateral to the risk that is the primary concern of the contract, the insured will not be precluded from recovery. This is generally not the rule in maritime insurance contracts.
 
 
 22
 Under the federal rule and the law of most states, warranties in maritime insurance contracts must be strictly complied with, even if they are collateral to the primary risk that is the subject of the contract, if the insured is to recover. See Buglass at 27-28, 34; Patrick J.S. Griggs, Coverage, Warranties, Concealment, Disclosures, Exclusions, Misrepresentations, and Bad Faith, 66 Tul. L. Rev. 423, 431-32 (1991). The rule of strict compliance with warranties in marine insurance contracts stems from the recognition that it is peculiarly difficult for marine insurers to assess their risk, such that insurers must rely on the representations and warranties made by insureds regarding their vessels' condition and usage. See O'Connor Transp. Co. v. Glens Falls Ins. Co., 189 N.Y.S. 612, 614 (2d Dep't 1921), aff'd, 233 N.Y. 659 (1922); see also In re Balfour MacLaine Int'l Ltd., 85 F.3d 68, 80-81 (2d Cir. 1996) (discussing maritime doctrine of uberrimae fidei, or utmost good faith, which requires party seeking insurance to disclose all circumstances known to it which materially affect the risk); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 13 (2d Cir. 1986) (same).
 
 
 23
 New York's Insurance Law, for example, specifically carves out a maritime exception from its general rule regarding breach of warranty. See N.Y. Ins. L. § 3106(c) ("This section [stating that breach of collateral warranties shall not preclude recovery] shall not affect the express or implied warranties under a contract of marine insurance."); Levine v. Aetna Ins. Co., 139 F.2d 217, 218 (2d Cir. 1943) (per curiam) (interpreting predecessor statute to N.Y. Ins. L. § 3106(c) and holding that "[c]ompliance with the warranty was a condition precedent to liability [under the contract of marine insurance] and afforded a complete defense irrespective of any question of causation"); Advani Enters., Inc. v. Underwriters at Lloyds, 962 F. Supp. 415, 419-20 (S.D.N.Y. 1997), vacated on other grounds, 140 F.3d 157 (2d Cir. 1998) (New York Ins. L. § 3106, like federal rule, requires strict compliance with warranties in marine insurance contracts).
 
 
 24
 Florida also treats maritime insurance contracts differently than it does other insurance contracts. See FL ST § 627.409(2) (setting forth distinct approach to marine insurance contracts). However, unlike New York and the majority of states, Florida does not require strict compliance with all warranties, but it does preclude recovery where the "breach or violation increased the hazard by any means within the control of the insured." Id.; see Hallock, 10 U.S.F. Mar. L.J. at 303 (noting that Florida, Texas, Hawaii, and Washington, unlike the majority of states, require "that the insurer demonstrate a causal connection between a breach of warranty and the loss in order to avoid coverage"). This rule was "designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss." Windward Traders, Ltd. v. Fred S. James & Co. of New York, Inc., 855 F.2d 814, 818 (11th Cir. 1988) (quoting Pickett v. Woods, 404 So.2d 1152, 1153 (Fla. App. 1981)).
 
 
 25
 Under the Florida rule, recovery is barred if the breach "increased the potential hazard or risk of loss over and above that which [the insurer] had agreed to insure . . . [and] is not a mere technical violation of the policy but significantly alters the risk of loss [the insurer] would be called on to bear." Fireman's Fund Ins. Co. v. Cox, 742 F. Supp. 609, 611 (M.D. Fla.), aff'd, 892 F.2d 87 (11th Cir. 1989). Florida thus treats warranties made pursuant to a maritime insurance contract the way New York treats warranties outside of the marine context - i.e., the insurer is relieved of liability only if the breach results in an increase in the risk assumed by the insurer. See N.Y. Ins. L. § 3106(b).
 
 B. Interpretation of the Warranty
 
 26
 Since recovery is precluded under New York if the warranty was breached, regardless of its materiality to the insurer's risk, and is also precluded under Florida law if the breached warranty was material to the insurer's risk, we need not decide which law applies if we find that the warranty in this case was breached and was material to the insurer's risk. We therefore turn to the interpretation of the warranty and the question of its materiality to the insurer's risk.
 
 
 27
 "The starting point in interpreting an insurance policy is to determine whether the policy terms are ambiguous. As a general rule, plain or unambiguous language will be given its ordinary meaning and effect, and the need to resort to rules of construction arises only when an ambiguity exists." Ingersoll Milling Mach. Co. v. M/V Bodena, 829 F.2d 293, 306 (2d Cir. 1987). "'As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading.'" In re Prudential Lines, Inc., 158 F.3d 65, 77 (2d Cir. 1998) (quoting Haber v. St. Paul Guardian Ins. Co., 137 F.3d 691, 695 (2d Cir. 1998)). "The determination of whether an insurance policy is ambiguous is a matter of law for the court to decide." Id.
 
 
 28
 We find that the Tow Endorsement is unambiguous and that it precludes coverage under either New York or Florida law for the accident that occurred in this case. The Tow Endorsement is clear on its face as to the hazards to which it is addressed. It states that "[i]n consideration of the rate and premium charged, . . . coverage is hereby provided for the towage of yachts up to 50 feet in length." This is an affirmative statement of coverage that necessarily implies that the towage of anything other than "yachts up to 50 feet in length" is not covered. The unambiguous implication of this provision is that, in exchange for Commercial Union's promise to provide coverage at the agreed-upon rate, Flagship Marine warranted that it would not tow vessels greater than 50 feet. There can be no doubt that this warranty was breached in this case and that it was material, because the length of vessels towed was correlated to the risk assumed by Commercial Union. Therefore, under New York or Florida law, Flagship Marine's breach precludes its recovery under the insurance contract.
 
 
 29
 Our conclusion regarding the materiality of the towed vessels' length to the insurer's risk is bolstered by a review of the other pertinent provisions of the policy. It reveals that, without the Tow Endorsement, there would be no coverage for the commercial towage of any vessel. The Tow Endorsement specifically rescinds a standard provision in Commercial Union's policy which disclaims "[a]ny liability for, or Any loss, damage, or expense arising from or accruing by reason of the towage of Any other vessel or craft other than emergency towage of a vessel in distress at sea to a port or place of safety." The Tow Endorsement thus deleted the general exclusion of towage and replaced it with an endorsement of towage in the limited circumstance of yachts less than 50 feet. This history suggests that the risks associated with towing were material to Commercial Union's evaluation of its exposure; and the 50-foot limitation suggests that Commercial Union further considered length to be an indication of the size of that risk.
 
 
 30
 We also disagree with the district court's view that the use of the term "yacht" in the Tow Endorsement, as opposed to the term "vessel," used elsewhere in the contract to refer to all types of craft, signifies that coverage was provided for the towage of non-yachts of any size (or, in other words, that Flagship Marine warranted only that it would not tow yachts greater than 50 feet). To the contrary, we read the endorsement as (1) providing coverage for the towage of yachts less than 50 feet; (2) contemplating the towage of yachts greater than 50 feet upon payment of an agreed-upon additional premium; and (3) being silent on the towage of non-yachts. Particularly in light of the fact that, without the endorsement, there would be no coverage whatsoever for towage, we cannot agree with the district court that the endorsement's silence as to non-yachts creates coverage. Cf. Advance Watch Co. v. Kemper Nat'l Ins. Co., 99 F.3d 795, 805 (6th Cir. 1996) ("[T]he absence of an exclusion cannot create coverage; the words used in the policy must themselves express an intention to provide coverage for liability for the kind of occurrence or injury alleged by the claimant."); Continental Cas. Co. v. Pittsburgh Corning Corp., 917 F.2d 297, 300 (7th Cir. 1990) ("[A]n exclusion from insurance coverage cannot create coverage.") (citations omitted).
 
 C. Remaining Claims
 
 31
 Because we find that Commercial Union was not liable for Flagship Marine's losses arising out of the MacLean accident, we reverse the district court's judgment with respect to Commercial Union's first declaratory judgment action and need not reach Commercial Union's remaining claims on appeal. We also need not address Flagship Marine's cross-appeal, in which Flagship Marine seeks reinstatement of its state law counterclaims for bad faith insurance handling. Since we find that Flagship Marine was not entitled to coverage, it necessarily follows that Flagship Marine was not entitled to damages for Commercial Union's allegedly tortious acts in refusing to pay the claim.
 
 CONCLUSION
 
 32
 We find that the Tow Endorsement constitutes a warranty, material to the risk assumed by the insurer, that was breached by Flagship Marine when it towed a vessel in excess of 50 feet in length. Accordingly, under either New York or Florida law, Commercial Union had no duty to defend Flagship Marine or to provide coverage for its losses. The judgment of the district court entering judgment in favor of Flagship Marine in Commercial Union's first declaratory judgment action is hereby reversed.
 
 
 
 NOTE:
 
 
 *
 The Honorable Damon J. Keith, Senior Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.