# United States Court of Appeals

## For the First Circuit

---

No. 05-2151

COMMERCIAL UNION INSURANCE COMPANY,

Petitioner, Appellant,

v.

DEAN PESANTE,

Respondent, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

---

Before

Torruella and Lynch, Circuit Judges,
and Young,[*] District Judge.

---

Robert J. Murphy, with whom Holbrook & Murphy was on brief,
for petitioner-appellant.
Stephen T. Morrissey, was on brief, for respondent-appellee.

---

August 9, 2006

---

[*] Of the District of Massachusetts, sitting by designation.

**TORRUELLA, Circuit Judge.** Appellant Commercial Union Insurance Company ("Commercial Union") brought a declaratory judgment action against appellee Dean Pesante ("Pesante") in the United States District Court for the District of Rhode Island, seeking a declaration that it was not liable under a marine insurance policy issued to Pesante for losses incurred by Pesante's vessel. During the ensuing litigation, Commercial Union filed a motion for summary judgment, which the district court denied. Following the denial, the parties filed a Joint Motion for Entry of Final Judgment. The district court then entered final judgment in favor of Pesante. Commercial Union now appeals the district court's entry of judgment for Pesante and denial of its motion for summary judgment. After careful review, we reverse.

## I.

In 1997, Pesante purchased the F/V Oceana ("Oceana"). Pesante used the Oceana for gill-net fishing ("gill netting"), which entails the use of entangling stationary nets to catch fish. Until 2001, Pesante obtained his marine insurance from the Ocean Marine Insurance Agency. Due to rising premiums, Pesante decided to seek a new policy. He contacted Philip Christopher ("Christopher") of Christopher & Regan Insurance ("C & R") to help him obtain a policy with the lowest possible premiums. Through Christopher, Pesante submitted an Application for Fishing Vessel Insurance (the "Application") to Commercial Union on March 23,

2001.  The Application identified the Oceana as a lobster boat.[1] Pesante has admitted that this was an inaccurate description of the vessel.[2]  A document accompanying the Application indicated that Pesante was paying a yearly premium of $1,535 and that C & R needed to match that premium in order to secure Pesante's business.

On March 27, 2001, Russell Bond ("Bond"), an underwriter at Commercial Union, faxed Christopher a quote which identified the Oceana as a thirty-eight foot lobster boat and quoted a premium of $1,550.  In an affidavit, Bond stated that had he known the vessel was a gill net vessel, the quote would have been twenty-five percent higher because gill net vessels pose a higher risk than lobster vessels.  On March 30, 2001, Christopher responded to Bond via fax and requested certain changes.  In his fax, Christopher also identified the Oceana as a thirty-eight foot lobster boat.

On April 5, 2001, Commercial Union issued the policy, which was renewed the following year.  The policy contained an express warranty that "the only commercial use of the insured vessel(s) shall be for lobstering."  Pesante has admitted that he never engaged in lobstering, which he described as "radically different" from gill netting.

---

[1]  Under his prior insurance, Pesante had always identified the Oceana as a gill net vessel.

[2]  According to Pesante, Christopher was the one who identified the Oceana as a lobster vessel and filled out that part of the Application before sending it to Pesante.  Pesante claims that he did not notice the mistake.

On September 25, 2002, while returning to port from a gill netting trip, the Oceana was involved in a collision with a Boston Whaler. Occupants of the Boston Whaler sustained serious injuries and brought claims against the Oceana. Several months after the accident, Pesante sought to correct the policy. He crossed out "lobstering" on the form and sent it to C & R along with a handwritten note stating that he had never done lobstering and did not intend to engage in lobstering in the future. Christopher faxed the form and note to Bond on December 30, 2002. On December 31, 2002, Commercial Union issued a denial of insurance coverage based on Pesante's misrepresentation and breach of the express warranty found in the policy. Commercial Union, on January 22, 2003, issued a reservation of rights letter under which it agreed to defend the claims arising from the September 25, 2002 incident.

On May 16, 2003, Commercial Union filed a Petition for Declaratory Judgment in the district court seeking a declaration of its rights and responsibilities under the policy. On July 29, 2003, Pesante filed an answer and counterclaim. On November 3, 2003, Commercial Union filed a motion for summary judgment and statement of undisputed material facts. In its opposition to the motion for summary judgment, Pesante stated that Commercial Union's statement of undisputed material facts "appears accurate." On March 3, 2004, the district court entered its Memorandum and Order

denying Commercial Union's motion for summary judgment. The court based its decision on a finding that there was no causal relationship between Pesante's breaches and the losses suffered. The court reasoned that, since Pesante was steaming home when the accident occurred, he technically was not gill netting and therefore was not in breach of the warranty at the time of the loss.

On June 21, 2005, the parties executed a stipulation of dismissal as to Pesante's counterclaim, then filed a Joint Motion for Entry of Final Judgment. In the motion, the parties stated that, based on the district court's denial of Commercial Union's motion for summary judgment and the stipulated dismissal of Pesante's counterclaim, there were no longer any factual matters to be resolved at a trial. On July 20, 2005, the district court found that there were no genuine issues of material fact that would prevent the entry of judgment. It therefore entered final judgment in favor of Pesante. Commercial Union has timely appealed from this final judgment, arguing that the district court erred in denying its motion for summary judgment and entering judgment for Pesante.

## II.

We begin by noting that "we do not have jurisdiction over denials of summary judgment motions . . . where a genuine issue of material fact remains in dispute." Rivera-Jiménez v. Pierluisi,

362 F.3d 87, 93 (1st Cir. 2004). We thus often do not have jurisdiction over denials of motions for summary judgment, because "a denial of a motion for summary judgment is merely a judge's determination that genuine issues of material fact exist. It is not a judgment, and does not foreclose trial on issues on which summary judgment was sought." Rivera-Torres v. Ortiz Vélez, 341 F.3d 86, 92 (1st Cir. 2004). Here, however, following the denial of summary judgment and the stipulation of dismissal as to Pesante's counterclaim, the parties filed a Joint Motion for Entry of Final Judgment in which they stated that there were no longer any factual matters to be resolved at a trial. The district court agreed and entered final judgment. It is from this final judgment, based on undisputed facts, that Commercial Union appeals, and we therefore have jurisdiction. See 28 U.S.C. § 1291.

Our review of a district court's decision granting or denying a summary judgment motion is de novo. Rodríguez v. Am. Int'l Ins. Co. of Puerto Rico, 402 F.3d 45, 46 (1st Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Commercial Union makes two arguments on appeal. First, it argues that Pesante made a material misrepresentation in his

application for insurance and that the policy was therefore voidable under either federal or Rhode Island law.[3] Second, it argues that Pesante breached an express warranty in the policy -- by using the Oceana for gill netting and not lobstering -- and that this breach rendered the policy voidable, regardless of whether there was any causal connection between the breach and the accident. Because we find the first argument determinative, we do not address the second argument.

This case arises under our admiralty jurisdiction since it involves a marine insurance policy. Windsor Mount Joy Mut. Ins. Co. v. Giragosian, 57 F.3d 50, 54 (1st Cir. 1995). Generally, in cases involving a marine insurance contract, we will apply state

---

[3] There appears to have been some confusion as to Commercial Union's argument below. In its motion for summary judgment, Commercial Union argued that Pesante's use of the vessel for gill netting instead of lobstering voided the policy because it affected the insurer's acceptance of risk and premium charged. However, Commercial Union labeled this argument not as a "material misrepresentation" argument but as a "breach of warranty" argument. The district court dismissed the argument, stating that Commercial Union seemed "to be making a hybrid claim that seeks to convert a breach of warranty occurring after the policy was issued into a reason why the breach affected the issuance of the policy." On appeal, Commercial Union has clarified that it is arguing that the policy is voidable due to a material misrepresentation in the application. We were initially troubled by the confusion below, inasmuch as a failure to raise an argument before the district court generally forfeits the argument, meaning that on appeal we would review only for plain error. See, e.g., Metro. Prop. and Cas. Ins. Co. v. Shan Trac, Inc., 324 F.3d 20, 24 (1st Cir. 2003). However, after further consideration, we believe that, while Commercial Union could have been clearer about its argument below, it adequately raised the issue so as to avoid plain error review. We also note that Pesante has not argued that our review on this issue is for plain error.

law unless an established "maritime rule controls the disputed issue, _and_ that rule is materially different from state law." _Id._ (emphasis in original). Commercial Union argues that the doctrine of _uberrimae fidei_ is an established rule of maritime law and determines the outcome of this case. Pesante argues that the doctrine of _uberrimae fidei_ is not an established rule of maritime law and that Rhode Island law should therefore apply.

"_Uberrimae fidei_" roughly means "of the utmost good faith." _Grande_ v. _St. Paul Fire & Marine Ins. Co._, 436 F.3d 277, 282 (1st Cir. 2006). Under this doctrine, the insured is required "to disclose to the insurer all known circumstances that materially affect the insurer's risk, the default of which . . . renders the insurance contract voidable by the insurer." _Giragosian_, 57 F.3d at 54-55. "[O]ne treatise says that in the marine insurance context, a material fact is 'that which can possibly influence the mind of a prudent and intelligent insurer in determining whether it will accept the risk.' 4A Appleman & Appleman, _Insurance Law and Practice_ § 2651 (rev. ed. Supp. 2005)." _Grande_, 436 F.3d at 282-83. Commercial Union argues that Pesante's failure to disclose that the Oceana was a gill netting vessel -- and not a lobster vessel -- was a material false statement because the underwriter would have charged a twenty-five percent higher premium had it known that the vessel was used solely for gill netting. We agree. Therefore, if we were to find that the doctrine of _uberrimae fidei_

is an established rule of maritime law, we would hold that the policy was voidable as a matter of law.

While we have never actually decided the issue, it is true that we have questioned whether uberrimae fidei is an established rule of maritime law. See Giragosian, 57 F.3d at 54 n.3. However, we need not decide the issue today, because even under Rhode Island law, the insurance policy was voidable as a matter of law due to the misrepresentations in the Application.

Under Rhode Island law, "[t]he falsity of any statement in the application for any policy covered by this chapter may not bar the right to recovery under the policy unless the false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer." R.I. Gen. Laws § 27-18-16 (2006).[4] The Rhode Island Supreme Court has concluded that, under this statute, "a material misrepresentation, even though innocently made, is a basis for rescinding a contract." Guardian Life Ins. Co. Of Am. v. Tillinghast, 512 A.2d 855, 859 (R.I. 1986). A material misrepresentation is one that affects the insurer's decision to accept the risk and insure the applicant. See Grande, 436 F.3d at 282-83; Evora v. Henry, 559 A.2d 1038, 1040 (R.I. 1989). Here, there is uncontroverted testimony that, had the underwriter known that the Oceana was used for gill netting and not

_____

[4] It is undisputed that the policy at issue here is "covered by this chapter" as required by the statute.

-9-

lobstering, Pesante would have been charged a premium twenty-five percent higher than the $1,550 that was quoted. It is therefore clear that Commercial Union would not have insured Pesante at the quoted price had it known the true nature of the vessel's use. We therefore find that the misrepresentation was material.[5]

Pesante argues that we should first address the breach of warranty issue, looking to whether the alleged breach caused the harm or whether Pesante was in breach of the policy at the time of the accident. We reject this argument. Whether Pesante was in breach of the express warranty at the time of the accident and whether any such breach caused the accident are irrelevant to the material misrepresentation inquiry. Because of the material misrepresentation made in Pesante's application, the policy was voidable from the beginning. Under Rhode Island law, the insurer's decision to rescind on the basis of the material misrepresentation must be upheld. See Tillinghast, 512 A.2d at 859. There is no reason to address the alternative arguments on breach of warranty.

## III.

For the foregoing reasons, we reverse the judgment of the district court and direct entry of judgment for Commercial Union.

**Reversed**.

---

[5] At oral argument, Pesante conceded that the misrepresentation was material.