# United States Court of Appeals
## For the First Circuit

No. 07-1709

LLOYD'S OF LONDON; GOTHAER VERSICHERUNGEN AG; GREAT
LAKES REINSURANCE (UK) PLC; ING INSURANCE SA,

Plaintiffs, Appellants,

v.

WILLIAM PAGÁN-SÁNCHEZ; CARMEN MALDONADO VENTURA;
CONJUGAL PARTNERSHIP PAGÁN-MALDONADO,

Defendants/Third-Party Plaintiffs, Appellees,

v.

CARIBBEAN BOAT MFG & SERVICES, INC., d/b/a Sea Rescue and/or
Vessel Assist Puerto Rico; INSURANCE COMPANY XYZ; JANE DOE,

Third-Party Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges.

Ian P. Carvajal with whom Francisco J. Vizcarrondo and Saldaña
& Carvajal, P.S.C. were on brief for appellants.
Daliah Lugo-Auffant with whom Pérez Vargas & Lugo Auffant Law
Offices, P.S.C. was on brief for appellees.

August 21, 2008

**LYNCH**, **Chief Judge**.  This maritime insurance case from Puerto Rico arises on interlocutory appeal from the denial of the plaintiff insurers' motion for summary judgment that payment under its policy was excused by the insured's breach of warranty.  The prevailing view, both in federal law and state maritime insurance law, is that a breach of a warranty will excuse the maritime insurer from payment regardless of any causal connection to the loss.  The district court erroneously applied a different view.  We reverse the district court and direct entry of judgment for plaintiff insurers.

                                I.

       As this comes to us on appeal from a motion for summary judgment, we review the district court's ruling de novo, taking the facts in the light most favorable to the nonmovants, the defendants.  Rosado-Quiñones v. Toledo, 528 F.3d 1, 5 (1st Cir. 2008); Littlefield v. Acadia Ins. Co., 392 F.3d 1, 6 (1st Cir. 2004).

       The plaintiffs, a group of insurance companies and underwriters including Lloyd's of London, Gothaer Versicherungen AG, Great Lakes Reinsurance (UK) PLC, and ING Insurance SA, issued an insurance policy to William Pagán-Sánchez which provided hull, machinery, and liability coverage for his recently purchased forty-three-foot pleasure boat, the Gabriella.  The effective dates of the policy were from January 31, 2003 to January 31, 2004.  The

policy was embodied in a twelve-page insuring agreement which includes a three-page section entitled "General Conditions & Warranties."

On July 19, 2003, as the Gabriella was traveling to Culebra, an island off of Puerto Rico, an exhaust hose came loose and the Gabriella began taking on water through the boat's exhaust system. Attempts to pump out the water were unsuccessful, and the Gabriella flooded and sank. The insured later submitted a claim to the plaintiffs for $175,000 for the loss of the boat and $100,000 for the costs incurred during salvage operations.

The insurers began an investigation into the circumstances surrounding the accident. The investigation found, inter alia, 1) that the loss of the Gabriella was caused by wear and tear, gradual deterioration, and lack of maintenance; and 2) that the vessel's fire extinguishing equipment had not been inspected or certified within the preceding year, and that the automatic engine room fire extinguisher system had been disconnected prior to the loss. There was no finding, and it has never been asserted by the insurers, that the condition of the fire extinguishing equipment had any relation whatsoever to the sinking of the boat. However, the insurers do assert that the lack of maintenance of the fire extinguishing equipment violated an express warranty of the insurance contract providing that "such [fire

extinguishing] equipment is properly installed and is maintained in good working order."

The plaintiff insurers then sought a declaratory judgment in federal district court in Puerto Rico that the breach by the insured of the fire extinguisher warranty[1] in the insurance contract precluded payment of the insured's claim. The defendants denied all the allegations and counterclaimed under the insurance contract for the amount of their original insurance claim.

Plaintiff insurers moved for summary judgment. The motion was referred to a magistrate judge who recommended that summary judgment be denied and that triable issues of material fact existed. In an unpublished order, the district court adopted in part the magistrate judge's recommendations and denied the motion for summary judgment. Plaintiffs then filed a motion for reconsideration which was also denied in another unpublished order. We describe below the portions of the district court's reasoning that are pertinent to our analysis.

II.

Appellate jurisdiction exists under 28 U.S.C. § 1292(a)(3), which provides this court with jurisdiction over interlocutory appeals in admiralty cases of orders determining the rights and liabilities of the parties.

---

[1] The plaintiff insurers also alleged that the insured was in breach of other warranties -- all unrelated to the loss itself -- but none of those allegations are raised on appeal.

-5-

Our review of the district court's summary judgment ruling is de novo. Littlefield, 392 F.3d at 6. As framed by the parties and the district court, two key issues must be addressed for summary judgment purposes. The first issue is whether the contested maritime insurance warranty clause is ambiguous. The second is whether, if the clause is not ambiguous and has been breached by the insured, the breach excuses the insurer from payment.

A.        Ambiguity of the Fire Extinguisher Warranty Clause

The district court erroneously held the fire extinguisher warranty clause was ambiguous.[2] Subsection 9 of the policy is entitled "General Conditions and Warranties." Subsection 9(l) of the policy provides:

> If the scheduled vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year and recharging as necessary.

This clause follows after subsection 9(k), which provides:

> It is warranted that covered persons must at all times comply with relevant Statutes, Laws, by-laws and US Coast Guard and other

---

[2]      The district court initially found it unnecessary to decide whether the fire extinguisher warranty clause was ambiguous because it held that even if the insured were in breach of the clause, that breach would have no effect on the insured's ability to recover under the policy. But in its denial of the insurers' motion for reconsideration, the court changed its position and ruled that the clause was a warranty clause, not a representation, and that it was ambiguous.

regulations, governing the use of the scheduled vessel.

It is clear that subsection 9(l) is a warranty provision. The clause plainly states that it is a warranty and it is located in the section of the policy where warranties are set forth.

The contract interpretation question of whether there is an ambiguity in the warranty clause is one for the court. See Littlefield, 392 F.3d at 6 ("Whether there is any ambiguity in [provisions of a maritime insurance contract] is a question of law for the court to determine."); see also Tropeano v. Dorman, 441 F.3d 69, 75 (1st Cir. 2006) ("The question of whether a contract is ambiguous is one for the courts."); 2 L.R. Russ & T.F. Segalla, Couch on Insurance § 21:13 (3d ed. 2008) ("Whether or not a contract of insurance is ambiguous is a question of law for the court . . . ."). It is a question we review de novo. Littlefield, 392 F.3d at 6; Crowe v. Bolduc, 365 F.3d 86, 95 (1st Cir. 2004). There is no ambiguity in the warranty clause at issue here.

The first sentence of subsection 9(l) is a warranty from the insured that if the vessel is fitted with fire extinguishing equipment, as the vessel here was, such equipment is properly installed and maintained in good working order. The second sentence provides the further definition that such proper installation and maintenance includes "the weighing of tanks once a year and recharging as necessary." This is a promissory warranty on the part of the insured. See 6 Couch on Insurance, supra, §

-7-

81:14 (promissory warranty is "one by which the insured stipulates that something shall be done or omitted after the policy takes effect and during its continuance"); see also Commercial Union Ins. Co. v. Flagship Marine Servs., Inc., 190 F.3d 26, 31 (2d Cir. 1999) (defining warranty as "a promise 'by which the assured undertakes that some particular thing shall or shall not be done, or that some condition shall be fulfilled'" (quoting L.J. Buglass, Marine Insurance & General Average in the United States 27 (2d ed. 1981))).

The date that the parties entered into the insurance contract does not matter. The insured warrants upon entering into the policy that the tanks have been weighed once a year and, if necessary, recharged, as part of the insured's warranty of proper maintenance of fire extinguishing equipment. That this is a clear obligation is reinforced by the introductory clause in the contract that states: "We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insuring agreement." (Emphasis added.)

Since the warranty is clear and unambiguous, it must be enforced as written under usual insurance law. See 2 Couch on Insurance, supra, § 21:11 ("[I]t is a well settled rule . . . that clear and unambiguous clauses must be accepted as the expression of

the intent of the parties, and enforced by the courts as written.").

It is also undisputed that the insured failed to produce any evidence of compliance with the promissory warranty relating to the fire extinguishers. Thus, the insured was in breach of the promissory warranty.

B.        Consequences of the Breach of Warranty

In light of the insured's breach, the question, then, is the effect of this breach.

The district court reasoned that Puerto Rico law would apply. It acknowledged that Chapter 11 of Puerto Rico's Insurance Code, which covers contract interpretation and construction, expressly excludes maritime insurance contracts from its coverage.[3] See P.R. Laws Ann. tit. 26, § 1101(1) ("The applicable provisions of this chapter shall apply to insurances other than ocean marine . . . insurances . . . ."). The court reasoned it should turn by default to the Puerto Rico Civil Code. In the absence of any statute or case law on point, the court predicted that under the Puerto Rico Civil Code the breach of a warranty clause in a

---

[3]     Chapter 11 provides that for cases within its coverage (that is, non-maritime insurance policies) misrepresentations, omissions, concealment of acts, and incorrect statements only prevent coverage when, inter alia, they materially alter the risk assumed by the insurer. P.R. Laws Ann. tit. 26, § 1110. We do not reach the question of whether the breach would prevent coverage under that provision.

contract of maritime insurance would not excuse payment by an insurer unless the breach was related to the cause of the loss.

The insurers agree with the district court that "Puerto Rico law is silent on the issue" and that "the majority rule with respect to warranty breaches is similar to the federal admiralty rule inasmuch as[] both treat any breach as having the effect of voiding coverage in its entirety." Op. and Order Den. Mot. for Recons., at 6. That being so, the insurers argue, even if Puerto Rico law would apply, it would apply as substantive law the majority rule that a breach of a promissory warranty excuses the insurer from coverage.

We turn to the relevant principles of choice of law analysis as most recently set forth by the Supreme Court in Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14 (2004).[4] Norfolk Southern clarified the Supreme Court's earlier choice of law analysis for maritime insurance contracts set forth in Wilburn Boat Co. v. Fireman's Fund Insurance Co., 348 U.S. 310, 314 (1955).[5]

----

[4] Unfortunately, neither of the parties called this case to the attention of either this court or the district court.

[5] There is general agreement that maritime insurance contracts fall within federal maritime jurisdiction, and as such, Congress and the courts have the power to fashion federal rules. Wilburn Boat, 348 U.S. at 314. As we have noted before,

> [b]eneath this surface agreement on general principles lies an abyss of confusion. One might think that construing a maritime insurance policy, in relation to damage occurring on the high seas, would be a paradigm case for a uniform body of federal

Norfolk Southern stated the general rule that "[w]hen a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation."  Id. at 22-23.  This lawmaking power in the federal courts stems from the Constitution's grant of admiralty jurisdiction to federal courts.  See id. at 23; Wilburn Boat, 348 U.S. at 314; see also U.S. Const. art. III, § 2, cl. 1.  This choice of law principle applies regardless of whether the basis for federal jurisdiction is admiralty jurisdiction, under 28 U.S.C. § 1333(1), or diversity, under id. § 1332.  See Norfolk S. Ry., 543 U.S. at 23; Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 411 (1953) ("[S]ubstantial rights . . . are not to be determined differently whether [a] case is labelled 'law side' or 'admiralty side' on a district court's docket.").

There is no dispute this is a maritime insurance contract.  We also agree that the prevailing view, under federal law and the law of most states, is that a breach of a promissory warranty in a maritime insurance contract excuses the insurer from coverage.  See Commercial Union, 190 F.3d at 31 ("Under the federal rule and the law of most states, warranties in maritime insurance contracts must be strictly complied with, even if they are

---

law . . . .  But the tensions in Supreme Court precedents are legendary . . . with regard to the reach of state law in federal maritime law generally . . . .
Cent. Int'l Co. v. Kemper Nat'l Ins. Cos., 202 F.3d 372, 373 (1st Cir. 2000) (internal citations omitted).

collateral to the primary risk that is the subject of the contract, if the insured is to recover."); see also Yu v. Albany Ins. Co., 281 F.3d 803, 809 (9th Cir. 2002) (noting that "rule that a marine insurer can avoid liability for breach of a . . . warranty, regardless of whether that breach caused the loss[,] . . . is in place in most states"); 6 Couch on Insurance, supra, § 83:20 ("In marine insurance, there is historically no requirement that the breach of warranty relate to the loss, so that any breach bars recovery even though a loss would have happened had the warranty been carried out to the letter."); 2 T.J. Schoenbaum, Admiralty and Maritime Law § 19-15 (4th ed. 2008) (noting that while courts tend to differ on whether the rule is a function of state law or federal law, most courts agree that in a maritime insurance contract, "[i]f the warranty is breached, the insurer is discharged").

Given this well-established general rule, in our view, the question becomes whether Puerto Rico has either clearly stated a contrary rule or demonstrated a strong interest in having a different rule. Only if so, would we address the question of

whether this is inherently a local dispute to Puerto Rico.[6]  Puerto Rico has done neither.

Here, the Puerto Rico legislature has expressed its intent to exclude maritime insurance contracts from its statutory provisions governing the interpretation and construction of insurance contracts.  P.R. Laws Ann. tit. 26, § 1101(1).  In addition, in twelve other provisions of its Insurance Code, the Puerto Rico legislature has excluded maritime insurance contracts from its insurance regulation.  See P.R. Laws Ann. tit. 26, §§ 329(4)(c), 406, 412(4), 414(6), 905(1), 1001(1)(c), 1007a, 1007b, 1101(1), 1119(1)(c), 1202(1)(e), 3701(1), 3803(6).  There is no Puerto Rico statute which expressly sets forth an interpretive rule for maritime contracts, much less an interpretive rule which expressly states that in such maritime contracts, a breach of an express promised warranty by the insured does not excuse the

_____

[6]    As Wilburn Boat recognized, not "every term in every maritime contract can only be controlled by some federally defined admiralty rule," and the federal government has "left much regulatory power" in the states "in relation to insurance companies and the contracts they make."  348 U.S. at 314-15.  And so sometimes terms in a maritime insurance contract so implicate local interests as to lead to the application of state law to interpret the contract.

-13-

insurer from its payment obligations.[7]  Moreover, there is no case law from the Puerto Rico Supreme Court supporting such a rule.

Nor is it clear as a matter of policy that Puerto Rico law would craft such a rule.  It is true that Puerto Rico has some interest in protecting insureds who are residents and that it has adopted an insurance code to do so.  But the Puerto Rico legislature has chosen rather emphatically to exclude maritime insurance contracts from the special protections it offers its insureds under its Insurance Code.  That choice may well reflect Puerto Rico's desire not to impose special burdens on maritime insurers, who are crucial to the island's commerce, and, in turn, to encourage them to do business in Puerto Rico.  See Commercial Union, 190 F.3d at 31-32 ("The rule of strict compliance with warranties in marine insurance contracts stems from the recognition that it is peculiarly difficult for marine insurers to assess their risk, such that insurers must rely on the representations and warranties made by insureds regarding their vessels' condition and usage."); 7 Couch on Insurance, supra, § 99:1 ("The added strictness [of the rule for maritime insurance contracts] is, in many ways, a consequence of the fact that marine insurers

_____

[7]  This is in distinct contrast with states which have statutes adopting the minority rule.  See, e.g., Fla. Stat. § 627.409(2) ("A breach . . . by the insured of any warranty . . . of any wet marine . . . insurance policy . . . does not void the policy . . . unless such breach . . . increased the hazard by any means within the control of the insured.").

-14-

historically have been in a poorer position to ascertain for themselves the true state of affairs."). This interest is served by not imposing more burdensome rules on maritime insurers than are imposed in the majority of jurisdictions.

Because Puerto Rico has not stated a contrary rule, we see no reason to apply anything other than the majority rule here: that the insured's breach of a promissory warranty excuses the insurers from payment.

We add a final note. This analysis has proceeded by reference to Puerto Rico law, despite an express choice of law clause in the insurance contract which states that if federal law does not apply, then New York law would apply. For reasons we do not understand, counsel for the insurers argued that New York law and Puerto Rico law were essentially equivalent and so consented to the court analyzing the case under Puerto Rico law. The district court suggested that the two laws are very different and that New York law follows the majority rule and would strictly enforce the warranty but Puerto Rico law would not. In light of the concession by counsel for the insurers, the court analyzed the matter under Puerto Rico law.

We are not certain that counsel, as a matter of litigation strategy, may vary the express terms of a choice of law clause. The issue has not been briefed to us. The concession greatly complicated this litigation. We agree with the district

court that under New York law, the insured's breach excuses the insurer from performance.  See <u>Commercial Union</u>, 190 F.3d at 32 (noting that New York law requires strict compliance with warranties in marine insurance contracts).  This fact demonstrates that there is no unfairness to the insured here from the result. The insured were on notice that they would face strict compliance with the warranty.

We reverse and remand to the district court for entry of summary judgment for the insurers.  No costs are awarded.