**MARKEL AMERICAN INSURANCE CO., Plaintiff,**

v.

**José Leonor VERAS, Defendant.**

**Civil No. 12–1305(DRD).**

United States District Court, D. Puerto Rico.

Feb. 7, 2014.

Ian P. Carvajal–Zarabozo, Pedro Quinones–Suarez, Saldana, Carvajal & Velez–Rive, P.S.C., San Juan, PR, for Plaintiff.

Eddie Q. Morales–Rivera, Maria B. Maldonado–Malfregeot, Morales & Maldonado Law Offices, P.S.C., Guaynabo, PR, for Defendant.

### OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

Markel American Insurance Company (hereinafter, "Plaintiff" or "MAIC") filed a declaratory judgment action against José Leonor Veras ("Defendant") seeking to nullify a maritime insurance policy it issued to Defendant in February 23, 2012. Plaintiff asserts, *inter alias*, that Defendant made material misrepresentations in his insurance application thereby voiding said contract *ab initio* and that his blood alcohol content ("BAC") at the time of the boating accident was in excess of the legal limit. Pending before the Court is MAIC's *Motion for Summary Judgment* (Docket No. 21) and Defendant's *Opposition to Plaintiff's Motion for Summary Judgment* (Docket No. 33). The Court referred the instant motion to Magistrate Judge Silvia Carreño-Coll on April 17, 2013 (Docket No. 24). The Magistrate Judge entered her *Report and Recommendation* on January 3, 2014 (Docket No. 44).

In her *Report and Recommendation,* the Magistrate recommended that MAIC's *Motion for Summary Judgment* be granted. Specifically, the Magistrate found that the insurance contract is void under the principle of *uberrimae fidei,* finding that said doctrine is entrenched in federal maritime law. The Magistrate further concluded that Defendant breached the warranty of truthfulness in the Insurance Agreement, thereby excusing MAIC from making any payments on the policy. Lastly, the Magistrate determined that Plaintiff

was also excused from making payments on the policy as a result of Defendant's inebriated state at the time of the boat crash, holding that Defendant's BAC at the time of the boating accident was above the legal limit.

To date, neither Plaintiff nor Defendant has filed an opposition to the *Report and Recommendation.*

## I. REFERRAL TO THE MAGISTRATE JUDGE

The Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See also* FED.R.CIV.P. 72(b); *see also* Local Rule 72(a); *see also Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's Report and Recommendation by filing its objections. FED. R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that

> any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

"Absent objection, ... [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.1985), *cert denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Additionally, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded upon appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir. 1992); *see also Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in a magistrate's recommendation, as well as the magistrate's failure to make additional findings); *see also Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *see also Borden v. Sec. of H.H.S.,* 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised").

The Court, in order to accept unopposed portions of the Magistrate Judge's Report and Recommendation, needs only satisfy itself that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n,* 79 F.3d 1415, 1419 (5th Cir.1996) (*en banc* )(extending the deferential "plain error" standard of review to the un-objected to legal conclusions of a magistrate judge); *see also Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. 1982) (en banc)(appeal from district court's acceptance of un-objected to findings of magistrate judge reviewed for "plain error"); *see also Nogueras–Cartagena v. United States,* 172 F.Supp.2d 296, 305 (D.P.R.2001) (finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding FED. R.CIV.P. 72(b)); *see also Garcia v. I.N.S.,* 733 F.Supp. 1554, 1555 (M.D.Pa.1990) (finding that "when no objections are filed, the district court need only review the record for plain error").

After a careful analysis, the Court finds no "plain error" in the instant case and

concurs with the Magistrate Judge's conclusions. Thus, rather than repeating the set of facts that pertain to the instant case in their entirety, the Court hereby **ACCEPTS, ADOPTS AND INCORPORATES** by reference the Magistrate Judge's findings of fact *in toto*, noting particularly that they remain unchallenged. The Court agrees with the Magistrate's determination that Defendant's opposition fails to comply with Local Civil Rule 56 and therefore deems admitted all of the facts that were properly cited and set forth in Plaintiff's *Statement of Uncontested Material Facts* (Docket No. 21).[1]

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTIONS

■■■ Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c); *see Celotex Corp. v. Catrett,*

477 U.S. 317, 324–325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Telephone Co.,* 110 F.3d 174, 179 (1st Cir.1997). A fact is "material" where it has the potential to change the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Id.* Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.*

After the moving party meets this burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts." *Cortes–Irizarry v. Corporacion Insular,* 111 F.3d 184, 187 (1st Cir.1997).

■■■ At the summary judgment stage, the trial court examines the record "in the

---

1. As the Magistrate correctly indicated, the parties were specifically admonished that failure to comply with Local Rule 56 would result in the Court deeming admitted the facts set forth in the movant party's statement (Docket No. 11, Pg. 4). Local Civil Rule 56 requires that a party opposing a motion for summary judgment submit an opposing statement of material facts admitting, denying, or qualifying "the facts supporting the motion for summary judgment by reference to each numbered paragraph of the movant party's statement of material facts." Local Civ. R. 56(c). Further, "unless a fact is admitted, the opposing statement shall support each denial ... by a record citation...." *Id.* Facts supported by citations to the record "shall be deemed admitted unless properly controverted."

The Court emphasizes that Defendant ignored Local Rule 56 at his own peril, failing to admit, deny, or qualify Plaintiff's assertions of fact paragraph by paragraph as required under Local Rule 56(c). *See Caban Hernandez v. Philip Morris USA, Inc.,* 486 F.3d 1, 7 (1st Cir.2007) (affirming the district court's decision to deem movant's facts as unopposed when opposing party submitted alternate statement of facts in narrative form). Defendant opted to file its opposition to Plaintiff's statement of uncontested facts in narrative form, which is precisely what the rules were designed to prevent. Further, as the Magistrate hinted, Defendant nonetheless failed to amend or supplement its opposition after Plaintiff objected to Defendant's *Statement of Contested Facts.* Docket No. 36. Accordingly, we deem Plaintiff's *Statement of Uncontested Material Facts* (Docket No. 21) to be deemed admitted. *See Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33 (1st Cir.2001).

light most flattering to the non-movant and indulges in all reasonable references in that party's favor. Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 959–60 (1st Cir.1997). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. *See Poller v. Columbia Broad. Sys.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also Pullman–Standard v. Swint*, 456 U.S. 273, 288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) ("findings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *see also Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 433 (1st Cir. 2000) (finding that "determinations of motive and intent ... are questions better suited for the jury"). "As we have said many times, summary judgment is not a substitute for the trial of disputed factual issues." *Rodríguez v. Municipality of San Juan*, 659 F.3d 168, 178–179 (1st Cir. 2011) (internal quotations and citations omitted). Conversely, summary judgment

is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] ... we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture." *Vera v. McHugh*, 622 F.3d 17, 26 (1st Cir.2010) (internal quotations and citation omitted). Moreover, "we afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Tropigas de P.R. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir.2011) (internal citations omitted).

Further, the Court will not consider hearsay statements or allegations presented by parties that do not properly provide specific reference to the record. *See* D.P.R. CIV. R. 56(e) ("The [C]ourt may disregard any statement of fact not supported by a specific citation to the record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); *see also Morales*, 246 F.3d at 33 (finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.").[2]

---

**2.** D.P.R. CIV. R. 56(b), often referred to as the anti-ferret rule, requires the party moving for summary judgment to submit a "separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact." Similarly, the non-moving party is required to submit a counter-statement "admit[ing], deny[ing] or qualify[ing] the facts by reference to each numbered paragraph in the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by record citation." D.P.R. CIV. R. 56(c).

■ If a defendant fails to file an opposition to the motion for summary judgment, the district court may consider the motion as unopposed and disregard any subsequently filed opposition. *Velez v. Awning Windows, Inc.*, 375 F.3d 35, 41 (1st Cir.2004). Furthermore, the district court must take as true any uncontested statements of fact. *Id.* at 41–42; *see* D.P.R.R. 311.12; *see Morales*, 246 F.3d at 33 ("This case is a lesson in summary judgment practice.... [P]arties ignore [Rule 311.12] at their own peril, and ... failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies deeming the facts presented in the movant's statement of undisputed facts admitted.")(internal citations and quotations omitted); *see also Euromodas, Inc. v. Zanella, Ltd.*, 368 F.3d 11, 14–15 (1st Cir.2004). However, this does not mean that summary judgment will be automatically entered on behalf of the moving party, as the court "still has the obligation to test the undisputed facts in the crucible of the applicable law in order to ascertain whether judgment is warranted." *See Velez*, 375 F.3d at 42.

### III. LEGAL ANALYSIS

■ The Court agrees with the Magistrate Judge that the insurance policy between the parties is void, or in the alternative, that Defendant's claims are unpayable as a result of his inebriated state at the time of the accident.[3] Plaintiff avers that under the doctrine of *uberrimae fidei* the insurance policy is void *ab initio*, that Defendant breached the warranty of truthfulness when filling out his insurance application thereby invalidating the policy, and that, in the alternative, MAIC is excused from payment because the loss occurred while Defendant was operating the vessel

with a BAC above the legal limit. We analyze each of Plaintiff's arguments in turn.

### A. The Insurance Contract is Void Under the Principle of *Uberrimae Fidei*

■ *Uberrimae fidei* is a maritime doctrine requiring "the parties to a marine insurance policy to accord one another the highest degree of good faith." *See Giragosian*, 57 F.3d at 54. The doctrine requires the insured "to disclose to the insurer all known circumstances that materially affect the insurer's risk, the default of which renders the insurance contract voidable by the insurer." *Commercial Union Ins. Co. v. Pesante*, 459 F.3d 34, 37 (1st Cir.2006) (internal citations and quotations omitted). Further, once the insurance policy is in effect, the insured is under a strict duty to ensure "that the vessel will not, through bad faith or neglect, knowingly be permitted to break ground in an unseaworthy condition." *Giragosian*, 57 F.3d at 55.

The applicability of the doctrine of *uberrimae fidei* was limited by the Supreme Court's decision in *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), wherein the Court stressed the critical significance of leaving the regulation of marine contracts to the individual States. In *Pesante*, the First Circuit reiterated the Supreme Court's holding in *Wilburn Boat Co.*, emphasizing that state law applies to marine insurance contracts "unless an established 'maritime rule controls the disputed issue, and that rule is materially different from state law.'" *See Pesante*, 459 F.3d at 37. Therefore, the applicability of *uberrimae fidei* hinges on whether said doctrine is a well-established maritime rule and on

---

**3.** The Court has admiralty jurisdiction over the instant matter, as it involves a maritime insurance policy. *Windsor Mount Joy Mut.* *Ins. v. Giragosian*, 57 F.3d 50, 54 (1st Cir. 1995).

whether said rule is not materially different from Puerto Rico law.

MAIC argues that *uberrimae fidei* is a well-established rule of maritime law and that federal law is controlling, as Puerto Rico has been reluctant to venture into the regulation of marine insurance contracts. Conversely, Defendant argues that said doctrine is not an established rule of maritime law and asks the Court to certify said issue to the Supreme Court of Puerto Rico for guidance in settling the uncertainty that has persisted in these types of cases.

### 1. Is *Uberrimae Fidei* a Well–Established Maritime Rule?

Although the First Circuit has had numerous opportunities to rule on whether the doctrine of *uberrimae fidei* is a well-established rule of maritime law, it has nonetheless declined to do so. *See Lloyd's of London v. Pagan–Sanchez,* 539 F.3d 19 (1st Cir.2008); *Pesante,* 459 F.3d at 38; *Giragosian,* 57 F.3d at 54–55. However, as the Magistrate Judge indicated, none of the aforementioned cases *reject* the notion that *uberrimae fidei* is entrenched in federal admiralty law. *See AGF Marine Aviation & Transport v. Cassin,* 544 F.3d 255, 263 (3rd Cir.2008) ("[T]he First Circuit has questioned whether *uberrimae fidei* is well established, but has declined to decide the issue."). The U.S. Courts of Appeals are split on the issue, with the Second, Third, Ninth, and Eleventh Circuits holding that *uberrimae fidei* is a well-established maritime rule, and the Fifth Circuit disavowing said doctrine as "not entrenched federal precedent." *Id.* (internal citations and quotations omitted). *Compare Puritan Ins. Co. v. Eagle S.S. Co. S.A.,* 779 F.2d 866, 870 (2d Cir.1985), *AGF Marine Aviation & Transport,* 544 F.3d at 263 (3rd Cir.) ("The Fifth Circuit's position had been criticized quite heavily...."), *Certain Underwriters at Lloyd's, London v. Inlet Fisheries, Inc.,* 518 F.3d 645, 654 (9th Cir.

2008), and *HIH Marine Svcs., Inc. v. Fraser,* 211 F.3d 1359, 1362 (11th Cir.2000), *with Albany Ins. Co. v. Anh Thi Kieu,* 927 F.2d 882, 889 (5th Cir.1991).

Moreover, the Magistrate Judge was unable to find any cases in this district holding that the doctrine of *uberrimae fidei* is not entrenched in federal admiralty law. In fact, most of the courts in this district have concluded that *uberrimae fidei* is a well-established rule of maritime law, with the most recent case noting that "despite the lack of a clear stance on the issue by the First Circuit ... 'the number and ratio of courts endorsing the doctrine weigh in favor of [the] conclusion'" that *uberrimae fidei* is entrenched in federal maritime law. *Catlin (Syndicate 2003) at Lloyd's v. `San Juan Towing & Marine Svcs., Inc.,* 974 F.Supp.2d 64, 75, 2013 WL 3943521, at *6 (D.P.R. July 30, 2013) (quoting *St. Paul Fire & Marine Ins. Co. v. Halifax Trawlers, Inc.,* 495 F.Supp.2d 232, 238 (D.Mass.2007)). In *San Juan Towing,* the district court emphasized that the Fifth Circuit's holding in *Anh Thi Kieu* has been heavily criticized by a number of leading treatises and that no other circuit has followed its decision in its twenty-two year history. *Id.* at *6; *See Inlet Fisheries, Inc.,* 518 F.3d at 654 ("Despite nearly universal acceptance in maritime insurance law, the Fifth Circuit threw the doctrine overboard because of its 'spotty application' in recent years. At least one commentator has suggested that this void in the case law reflected *'uberrimae fidei's* unquestioned acceptance, rather than its abandonment.'")(citing Mitchell J. Popham & Chau Vo, *Misrepresentation and Concealment in Marine Insurance Contracts: An Analysis of Federal and State Law within the Ninth Circuit,* 11 U.S.F. Mar. L.J. 99, 124 (1998–1999)).

The doctrine of *uberrimae fidei* has been firmly embedded in American mari-

time law since 1828, when Justice Story, writing for the Supreme Court, held that "the contract of insurance, is one of mutual good faith.... The underwriter must be presumed to act upon the belief, that the party procuring insurance, is not, at the time, in possession of any fact material to the risk, which he does not disclose." *McLanahan v. Universal Ins. Co.*, 26 U.S. 170, 1 Pet. 170, 7 L.Ed. 98 (1828); *see Inlet Fisheries, Inc.*, 518 F.3d at 650–51 (noting that the Supreme Court's decision in *Wilburn Boat* did nothing to change the standing of the doctrine of *uberrimae fidei*, as *Wilburn Boat* "expressed a reluctance for federal courts to fashion new admiralty rules, not a desire to do away with existing ones.").

Accordingly, the Court, agreeing with the Magistrate Judge, holds that the doctrine of *uberrimae fidei* is a well-established maritime rule. Next, we must determine whether *uberrimae fidei* is materially different from Puerto Rico law.

## 2. Is The Doctrine of *Uberrimae Fidei* Materially Different From Puerto Rico Law?

In the instant matter, Defendant avers that Puerto Rico state law is controlling given the particularized language found in the insurance contract between the parties.[4] However, Defendant admits that Puerto Rico law is devoid of any indication regarding whether *uberrimae fidei* applies to maritime insurance contracts. Conversely, Plaintiff argues that the Puerto Rico legislature has neither clearly stated a contrary rule nor demonstrated a strong interest in having one, as it has "clearly and unequivocally expressed its intent to exclude maritime insurance contracts ... from its statutory provisions governing the

interpretation and construction of insurance contracts." Docket No. 37, Pg. 4.

In *Pagan–Sanchez*, the First Circuit accentuated that thirteen different provisions of the Puerto Rico Insurance Code had excluded maritime insurance contracts from its insurance regulation, finding no statute expressly setting forth interpretative rules for maritime contracts. *See Pagan–Sanchez*, 539 F.3d at 25 ("[T]he Puerto Rico legislature has chosen rather emphatically to exclude maritime insurance contracts from the special protections it offers its insureds under its Insurance Code."). Evidently, the legislature in Puerto Rico has declined to adopt an insurance code incorporating maritime insurance policies, thereby leaving maritime insurance contracts solely within the interpretation of federal maritime law. Thus, the well-established maritime doctrine of *uberrimae fidei* governs the insurance policy disputed in the case at bar.

## 3. Has Defendant José Leonor Veras Violated *Uberrimae Fidei*?

■■■ We agree with the Magistrate's Judge's determination that the undisputed facts show that Defendant made several material misrepresentations in his Insurance Application, thereby voiding the insurance contract *ab initio* under the doctrine of *uberrimae fidei*. The definition of materiality in insurance contracts has been a frequently debated issue, with the Second, Third, and Ninth Circuits all differing on its definition in the *uberrimae fidei* context. The Second Circuit has narrowly defined materiality as "something which would have controlled the underwriter's decision to accept the risk." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 14 (2d Cir.1986) (citations and quotations

---

4. The insurance contract reads, in relevant part: "This policy is subject to established principles and precedents of federal admiralty law of the United States of America, but where no substantive principle or precedent is applicable state or territory law shall apply." Docket No. 19–1.

omitted). Conversely, the Ninth Circuit's definition of materiality is much broader, finding that "[t]he fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law." *Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir.2001) (citation omitted). Further, the Third Circuit has emphasized its stance as being broader than the Second Circuit's but narrower than the Ninth's, holding that, irrespective of the scope of materiality, the purchase price of a vessel is undoubtedly material to the risk involved, "as it provides an objective measure of the vessel's worth and the corresponding risk of insuring the vessel." *See AGF Marine Aviation & Transport*, 544 F.3d at 265 (internal citations and quotations omitted).[5] Lastly, the First Circuit has concluded that materiality in maritime insurance contracts means "something that affects the risk and might lead either to a higher premium or a refusal of insurance." *Grande v. St. Paul Fire & Marine Ins. Co.*, 436 F.3d 277, 282 (1st Cir.2006). The First Circuit further held that under *uberrimae fidei*, an insured must make " 'full disclosure of all material facts of which the insured has, or ought to have, knowledge ... even though no inquiry be made.' " *Id.* at 283 (quoting 7 Russ & Segalla, *Couch on Insurance* § 99:2 (3d ed. 1997)).

Plaintiff avers that Defendant, in his Application, misrepresented: (1) the purchase price of the vessel; (2) the existence of prior losses; (3) having formerly owned other vessels; and (4) having his vessel for sale. Although the Court declines to adopt the more liberal definition of "materiality" proffered by the Ninth Circuit and adopted by Magistrate Judge Silvia Car-

reño–Coll, we nonetheless endorse the Magistrate's conclusion that the insurance contract is void *ab initio* as a result of Defendant's material misrepresentations in his Insurance Application. Hence, the Court finds that, even adopting the narrower definition of "materiality" outlined *Knight*, Defendant misrepresented various material facts that "would have controlled the underwriter's decision to accept the risk." *Knight*, 804 F.2d at 14.

▮▮▮▮ First, Defendant misrepresented the purchase price of the vessel, stating in his Application that the purchase price was $130,000 when the actual price was $78,000. It is well-established that the purchase price of the vessel being insured is a material fact of the insurance agreement, as an insurer is likely to price the policy according to the overall value of the vessel. *See King v. Aetna Ins. Co.*, 54 F.2d 253 (2d Cir.1931) (holding that "concealment of an overvaluation so excessive as to make the risk speculative vitiates the policy."); *AGF Marine Aviation & Transport*, 544 F.3d at 265 (agreeing with the Ninth Circuit that "the purchase price of a vessel is unquestionably a fact material to the risk, as it provides an objective measure of the vessel's worth and the corresponding risk of insuring the vessel.") (quoting *New Hampshire Ins. Co. v. C'Est Moi, Inc.*, 519 F.3d 937 (9th Cir.2008)) (internal quotations omitted); *see also Certain Underwriters of Lloyd's v. Montford*, 52 F.3d 219, 222 (9th Cir.1995). Therefore, the fact that a marine insurer asks for the purchase price of the vessel is, in and of itself, sufficient to establish that the fact is material to the risk involved in the policy, with any misrepresentation violating *uberrimae fidei*. In the case at bar, upon being questioned about the purchase

---

**5.** Black's Law Dictionary defines "material" as "of such a nature that knowledge of the item would affect a person's decision-making; significant; essential." Black's Law Dictionary 998 (8th ed. 2004).

price of the vessel, Defendant opted to overstate the actual purchase price by $52,000 or roughly 67 percent (%), a substantial amount.[6] In fact, the underwriting agent of the policy in question attested that had it known the purchase price was $78,000, it would not have agreed to insure the vessel for the agreed upon $100,000. Accordingly, the Court holds that Defendant's misrepresentation of the purchase price of the vessel was material, thereby voiding the insurance policy *ab initio.*

Second, Plaintiff argues that Defendant made three other material misrepresentations in his application. Specifically, Plaintiff avers that Defendant concealed having previously owned four (4) other boats and having experienced a prior loss in one of these vessels. Plaintiff also alleges that Defendant failed to inform it that his vessel was on sale. During his deposition, Defendant admitted having owned four other boats, apart from the one in dispute, and having lost one of these in a fire. The insurance underwriter indicated that had it known that Defendant lost another boat in a fire, it would have conducted a full investigation of the facts giving rise to the loss before accepting the risk of insuring Defendant's vessel. The Court agrees with Plaintiff that prior losses in vessels previously owned by a potential client are material to the consequence that said fact would have controlled the underwriter's decision on whether to issue an insurance policy and at what price. The same holds true for the concealment that Defendant had owned four other boats, as Plaintiff was not accorded the opportunity to investigate and inquire about prior losses with regards to these other vessels.

Lastly, Plaintiff asserts that Defendant concealed having the boat on sale

at the time of the application. The underwriting agent, Blue Waters Insurers, Corp., contends that had it known that the vessel was for sale, "it would have inquired about the sales price and would not have insured the vessel for more than the advertised price." *See Statement Under Penalty of Perjury of Eugenio Rosas,* Exhibit 3, at ¶ 13. The Court agrees with the underwriting agent's assertion that the asking price for the vessel is material, as an insurer would be hard-pressed to insure a vessel for a higher amount than the price the insured is seeking in the open market. Thus, failure to inform a potential insurer of the intent to sell a vessel affects the insurer's ability to gauge the value of the boat and the risks associated with insuring it.

Accordingly, the Court finds that Defendant's material misrepresentations in his Insurance Application violate the doctrine of *uberrimae fidei* and hence void the insurance policy *ab initio.* Said misrepresentations, particularly the purchase price of the vessel, placed the insurer in the distinct disadvantage of playing a game of cat and mouse which Plaintiff simply could not win. Without the correct information, MAIC was simply unable to appropriately value the boat and price the insurance policy accordingly. The Court, finding no plain error in the Magistrate Judge's assessment, hereby **GRANTS** Plaintiff's *Motion for Summary Judgment* on these grounds, finding that the insurance contract was void *ab initio* under the doctrine of *uberrimae fidei.*

### B. Breach of Warranty of Truthfulness

Plaintiff further posits that Defendant's breach of the warranty of truthfulness precludes payment on Defen-

---

**6.** The Court agrees with the Magistrate Judge's analysis regarding Defendant's arguments as to why he did not misrepresent the

purchase price of the vessel and, for the sake of brevity, fully incorporates it herein by reference. *See* Docket No. 44, Pgs. 12–13, n. 3.

dant's claim for the loss of his vessel. "When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 22–23, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004). As previously discussed, the Puerto Rico legislature has opted not to include maritime insurance contracts in Puerto Rico's Insurance Code, which covers contract interpretation and construction. *Pagan–Sanchez*, 539 F.3d at 23. In fact, the legislature has expressly stated its intent to exclude maritime insurance contracts from Chapter 11 of the Insurance Code, which controls the interpretation of insurance contracts in Puerto Rico. P.R. Ins.Code, Art. 11.010(1), *codified under* P.R. Laws. Ann., tit. 26 § 1101(1). Therefore, in the absence of any statute or case law on point, federal law controls the contract interpretation. *See Norfolk Southern Railway Co.*, 543 U.S. at 22–23, 125 S.Ct. 385. Under federal law, "a breach of a promissory warranty in a maritime insurance contract excuses the insurer from coverage." *Pagan–Sanchez*, 539 F.3d at 24 (granting summary judgment in favor of insurer after finding that insured violated warranty in insurance contract); *see Commercial Union Ins. Co. v. Flagship Marine Services, Inc.*, 190 F.3d 26, 31 (2d Cir.1999) ("Under the federal rule and the law of most states, warranties in maritime insurance contracts must be strictly complied with, even if they are collateral to the primary risk that is the subject of the contract, if the insured is to recover."); *Yu v. Albany Ins. Co.*, 281 F.3d 803, 809 (9th Cir.2002) (holding that a maritime insurer can avoid liability if insured breaches warrant, regardless of whether said breach caused the loss).

 The Court endorses Magistrate Judge Carreño–Coll's conclusion that Plaintiff is entitled to a declaratory judgment excusing it from payment on the policy due to Defendant's breach of the warranty of truthfulness. We agree that the insurance policy "contains language making clear that the truthfulness of all representations made therein is warranted by the applicant and that incorrect answers constitute breach of that warranty, voiding the policy." Docket No. 44, Pg. 14. The Insurance Application reads, in relevant part:

> The statements and answers provided herein are *warranted* by the applicant and owner to be true and correct. If incorrect answers are provided (either by error, omission or neglect), you will be in breach of this warranty and your policy, if issued, will be void from inception. If this policy is issued, the application will form an integral part of the policy.

Exhibit 1 to *Amended Complaint*, Docket No. 19–1, Pg. 22.

Thus, the statements provided by Defendant in his Insurance Application were warranted to be true and accurate. Nevertheless, Defendant breached his warranty of truthfulness when he misrepresented the purchase price of the boat, neglected to inform Plaintiff of the other vessels which he had previously owned, concealed that he had lost a prior boat as a result of a fire, and failed to inform the insurer that his boat was for sale. It is irrelevant to our analysis whether the breach of warranty eventually gave rise to the damage caused to the vessel, as the "breach of a promissory warranty in a maritime insurance contract excuses the insurer from coverage," even if "they are collateral to the primary risk that is the subject of the contract...." *See Pagan–Sanchez*, 539 F.3d at 24–26 (internal citations and quotations omitted). The strict compliance rule stems from the fact that it is "[p]eculiarly difficult for marine insurers to assess their risk, such that insurers must rely on the representations and warranties made by

insureds regarding their vessels' condition and usage." *Commercial Union Ins. Co.*, 190 F.3d at 31–32. As such, MAIC is entitled to a declaratory judgment as a matter of law, as Defendant's breach of his warranty of truthfulness placed Plaintiff in a peculiarly difficult position to assess the risks involved in insuring the vessel. Accordingly, Plaintiff MAIC is excused from payment on any losses under the policy.

### C. Defendant's BAC and its Effect on the Applicability of the Insurance Policy

■ MAIC further contends that Defendant, at the time of the crash, was driving his vessel while under the influence of alcohol, in clear violation of the both the law and an express condition set forth in the Insurance Policy. The Magistrate Judge agreed with Plaintiff, concluding that MAIC was excused from payment, as the boating accident was caused while Defendant was operating the vessel with a BAC above the legal alcohol limit. After a careful analysis, the Court finds no "plain error" in the Magistrate Judge's *Report and Recommendation* and agrees with the conclusions therein. The Court briefly explains below.

The Insurance Policy in question clearly outlined that no insurance coverage would be provided if liability was incurred as a result "of the willful misconduct or criminal act of the insured.... This exclusion includes loss, damage, injury or liability occurring while an insured is operating the insured yacht with a [BAC] equal to or in excess of the legal limit...." Exhibit 1 to *Amended Complaint*, Docket No. 19–1, Pgs. 14–15. Puerto Rico law prohibits individuals from operating a motor vehicle if their blood alcohol content is 0.08% or higher, meaning that Defendant was in violation of the law, and therefore an express condition in the Insurance Agreement, if his BAC was 0.08% or higher at the time of the accident. P.R. Laws. Ann., tit. 9 § 5202.

It is uncontested that approximately four (4) hours after the accident Defendant's BAC was 0.08%. *See* Exhibit 2 to *Amended Complaint*, Docket No. 19–1, Pg. 3. Further, the undisputed facts show that Defendant's BAC at the time of the accident was 0.12% or higher, as Plaintiff's expert, Dr. Christopher Borgert, opined that due to his BAC, José Leonor Veras was unable to safely operate a watercraft at the time of the accident. *See* Exhibit 5, Expert Report of Dr. Christopher Borgert.[7]

Accordingly, the Court holds that Defendant violated an express condition in the Insurance Agreement when he crashed his boat while driving under the influence of alcohol. Hence, MAIC is entitled to a declaratory judgment relieving it from its obligation to issue payment on the policy, as Defendant's BAC was above the legal limit at the time of the boating accident.

### IV. CONCLUSION

For the reasons set forth in the instant *Opinion and Order*, the Court hereby **ADOPTS** the Magistrate Judge's *Report and Recommendation* (Docket No. 44) **IN TOTO** and **INCORPORATES IT HEREIN BY REFERENCE.** Accordingly, Plaintiff's *Motion for Summary Judgment* (Docket No. 21) is hereby **GRANTED.**

**IT IS SO ORDERED.**

---

7. The Court agrees with the Magistrate Judge's analysis regarding Defendant's arguments as to why his BAC had been contaminated and, for the sake of brevity, fully incorporates it herein by reference. *See* Docket No. 44, Pg. 17, n. 5.